UNITED STATES of America, Appellee,

v.

Raul Leyja GALVAN, Appellant.

UNITED STATES of America, Appellee,

v.

Enrique Ruiz SILVA, Appellant.

Nos. 91–2444, 91–2445.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1991.

Decided April 9, 1992.

Mark Godwin, Des Moines, Iowa, argued (Karla Fultz, on the briefs), for appellants.

Stephen Patrick O'Meara, Asst. U.S. Atty., Des Moines, Iowa, argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Raul Leyja Galvan and Enrique Ruiz Silva appeal their convictions for conspiracy to distribute cocaine.[1] Silva also appeals his conviction for aiding and abetting the distribution of cocaine. On appeal, Galvan argues that: (1) the evidence was insufficient to support the district court's [2] finding of the amount of cocaine involved; (2) the evidence was insufficient to support his conspiracy conviction; (3) the district court erred when it failed to give a requested jury instruction; and (4) the government, in its closing argument, impermissibly shifted the burden of proof by alluding to the fact that Galvan did not testify. Silva argues that the evidence is insufficient to support both his conspiracy and his aiding and abet-

---

* THE HONORABLE DANIEL M. FRIEDMAN, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

1. Galvan was also convicted of distribution of cocaine and carrying a firearm during a drug trafficking crime. He does not contest his convictions on these charges.

2. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

ting conviction, and he adopts all other arguments made by Galvan. We affirm.

## I.

### A. Amount of Cocaine [3]

Galvan claims that the district court erred in calculating his offense level as 26 under § 2D1.1 of the Sentencing Guidelines because there was insufficient evidence to support the district court's findings that thirty-eight ounces of cocaine were attributable to him.[4] When an appeal is based on factual grounds, we reverse the sentence imposed by the district court only if we conclude that the factual findings on which the court relied are clearly erroneous. *United States v. Pou*, 953 F.2d 363, 370 (8th Cir.1992) (citing 18 U.S.C. § 3742(e) (1988); *United States v. Lawrence*, 915 F.2d 402, 406 (8th Cir.1990)). Whether uncharged drugs are part of a common scheme or plan is also a factual finding subject to the clearly erroneous standard. *Lawrence*, 915 F.2d at 406. Where uncharged drugs are found to be part of a common scheme or plan, the sentencing court is not limited by the amount seized and may sentence according to its estimation based on trial testimony. *United States v. Duckworth*, 945 F.2d 1052, 1054 (8th Cir.1991) (citing *United States v. Evans*, 891 F.2d 686, 687 (8th Cir.1989), *cert. denied*, 495 U.S. 931, 110 S.Ct. 2170, 109 L.Ed.2d 499 (1990)). Trial testimony used to estimate the amount of uncharged drugs, however, must clearly establish either the dates of the transactions or the amounts of drugs involved. *United States v. Hewitt*, 942 F.2d 1270, 1274 (8th Cir.), *reh'g denied*, No. 90–5578 (8th Cir. Oct. 1 1991); *United States v. Phillippi*, 911 F.2d 149, 151 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 702, 112 L.Ed.2d 691 (1991). In this case, trial testimony clearly attributed at least nineteen ounces (538.65 grams) of cocaine to Galvan. Because a base offense level of twenty-six applies to amounts of at least 500 grams but less than two kilograms of cocaine, U.S.S.G. § 2D1.1(c)(9), we do not need to reach the question of whether the government proved the additional amounts. *United States v. Regan*, 940 F.2d 1134, 1136 (8th Cir.1991); *see also Phillippi*, 911 F.2d at 151 (erroneous inclusion of drugs harmless error where base offense level remained the same after improperly included amounts omitted). We conclude the district court correctly assigned Galvan a base offense level of twenty-six.

### B. Conspiracy

Galvan and Silva both argue that there was insufficient evidence of a conspiracy.[5] They claim that the evidence failed to show that an agreement existed, with each other or with others, to distribute cocaine. Galvan claims that there was no proof that anyone else had a stake in the outcome of his actions or got paid for participating in his distribution of cocaine. Silva argues that the government did not show that he "knowingly contributed [his] efforts in the furtherance" of selling cocaine, *United States v. Mims*, 812 F.2d 1068, 1075 (8th Cir.1987), or that he was a party to any actual agreement, tacit or explicit, to distribute cocaine.

In reviewing a conspiracy conviction for sufficiency of the evidence, the court views the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences drawn from the evidence that support the jury's verdict. *Duckworth*, 945 F.2d at 1053; *United States v. Newton*, 756 F.2d 53, 54 (8th Cir.1985). The evidence need not exclude every reasonable hypothesis except guilt. *Newton*, 756 F.2d at 54. The jury's

---

**3.** Silva adopted this argument and the arguments addressed in Parts D and E of this opinion by reference pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure. Because we find that the district court did not err, we do not address these issues separately for Silva.

**4.** When a conviction for violating federal drug statutes is involved, the trial court may consider amounts of drugs involved in the conviction of co-conspirators. *United States v. Holland*, 884 F.2d 354, 358 (8th Cir.), *cert. denied*, 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989).

**5.** Because appellants' arguments on this point are so similar, we address them together.

verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt. *United States v. Rodriguez*, 812 F.2d 414, 416 (8th Cir. 1987). A conspiracy generally consists of an agreement between two or more people to violate the law and an overt act in furtherance of the conspiracy. *United States v. Watts*, 950 F.2d 508, 512 (8th Cir.1991). A person becomes a member of a conspiracy when he knowingly contributes his efforts to the conspiracy's objectives. *Duckworth*, 945 F.2d at 1053; *Mims*, 812 F.2d at 1075.

██ Here, there was sufficient evidence that a conspiracy existed between Galvan and Silva to sustain the conviction. They were roommates in two different places for over a year. Brad Wiegand, a former customer, testified that several times when he had taken people to buy cocaine from Galvan, Silva answered the door and told them Galvan was not there. After some discussion, however, Silva would sell them cocaine. In addition, Wiegand testified that once, when he went to buy from Galvan, Silva was present and Galvan gave Silva the money from the sale. Deborah Benninger, Galvan's ex-girlfriend, testified that she bought cocaine from both men. She also testified that Galvan sometimes sent her to Silva to buy cocaine when he needed more to distribute. Benninger stated that Silva had been present sometimes when Galvan sold cocaine to other people, and that she had overheard conversations between the two men about cocaine and how much money they made. She said that she had seen them counting large amounts of money. She also testified about a trip to Chicago she had taken with Galvan, Silva and another man called Tito. They went to a bar called "Cerveza Frio." Tito and Galvan went into the back room, where Silva joined them briefly. They left the bar almost immediately after the three men rejoined her. When they got into the car, Galvan stuffed something between the seats. Then, they all "did" some cocaine. When they arrived home, Galvan left, announcing that he was going to go make money. Benninger understood that to mean that he was going to sell cocaine because he was unemployed at the time and she believed the trip had been for the purpose of buying drugs. Stacy Williams, a government informant, testified that on one occasion when she went to make a buy from Galvan, he went into the bedroom with Silva and another man for a few minutes, then called her to the bedroom door and sold her the cocaine she wanted. On another buy, she went to the apartment looking for Galvan, and Silva told her Galvan had just left to meet her.

We believe that the evidence, taken in the light most favorable to the government, is sufficient to allow a jury to find that Galvan and Silva conspired with each other to distribute cocaine. Therefore, we affirm their convictions.

## C. Aiding and Abetting

██ Silva argues that the evidence is insufficient to support his conviction of aiding and abetting. The government claims that Silva aided and abetted the distribution of cocaine to a drug enforcement agent. Stacy Williams testified that she had made arrangements to meet Galvan at a motel to introduce him to a buyer, who was really a drug enforcement agent. When Galvan did not arrive at the agreed time, she and the agent drove to Galvan's apartment. Silva answered the door and told her that Galvan had just left to meet her.

Although we agree that, standing alone, this would not be sufficient to sustain a conviction, we must look to the evidence as a whole to determine whether a reasonable jury could have found that Silva aided and abetted Galvan in this sale. Given the evidence of conspiracy, and the fact that the jury found there was a conspiracy, the verdict was reasonable. We affirm.

## D. Jury Instruction

██ Galvan contends that the district court erred because it failed to give a jury instruction he requested. The instruction would have told the jury that they could not convict him of conspiracy with Ben-

ninger because the grand jury knew about her and did not name her as an unindicted co-conspirator. He argues that the government suggested that Benninger was a co-conspirator, and that the jury may have convicted him of conspiring with her rather than with Silva. He admits, however, that he could be indicted and convicted for conspiring with unnamed co-conspirators if the grand jury did not know their identity.

Galvan's position is without legal merit. The case he relies on for support, *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975), is directly opposed to his proposition. In that case, the court held that the grand jury could never name an unindicted co-conspirator in an indictment. Any unindicted co-conspirators must remain unnamed. *Id.*[6]

### E. Comment on Failure to Testify

 Galvan's last argument is that the government impermissibly shifted the burden of proof to the defense, constituting an infringement of his Fifth Amendment right not to testify. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); *United States v. Neumann*, 887 F.2d 880, 887 (8th Cir.1989). Both Galvan and Silva met Stacy Williams, the government informant, prior to 1990 through work. Williams had been hospitalized with mental and emotional problems during 1989 due to the breakup of a past relationship. Silva testified that he had had a romantic relationship with her during most of 1990.[7] He claimed that Williams had threatened him when they broke up, saying "I'll see you soon." He testified that he believed Williams was trying to get revenge. During closing argument, the government attorney said, "The defendant [Silva] has brought no one of what might be [sic] their mutual friend [sic] or mutual employees to tell you about their relationship." Galvan claims that because he was the only person the jury knew about who was both a mutual friend and a mutual employee, the government was impermissibly pointing out the fact that he had not testified.

Galvan's right not to testify was not infringed by the prosecutor's remark in this case. We have read the prosecutor's remarks with great care. The remark was directed to defendants' failure to call a witness in the context of discussing Silva's credibility. The prosecutor used the disjunctive "or" in his remark. His comment simply pointed out that, in considering Silva's credibility, the jury should remember that no one who knew both Williams and Silva, either as a friend or as a co-worker, had testified that there had been a romantic relationship between the two. In addition, the judge properly instructed the jury, both in the final instructions and at the time of the remark, that the defense did not have a burden of proof or a burden to produce evidence. Given the context and the phraseology of the remark, and the judge's instructions to the jury, we do not think that the remark was improper. *See Neumann*, 887 F.2d at 887; *Moore v. Wyrick*, 760 F.2d 884 (8th Cir.1985) (prosecutor's inviting jury to draw adverse inference from defendant's failure to call certain witnesses did not deprive defendant of a fair trial).

## II.

Because we find no errors of fact or law, we affirm the district court.

---

6. Galvan also relies on *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951). This case does not stand for his proposition either. It simply notes, in dicta, that a person can be convicted of conspiracy with an unnamed person. *Id.* at 375, 71 S.Ct. at 443.

7. Williams denied having any such relationship with Silva.