**UNITED STATES of America, Appellee,**

v.

**Chet SEARING, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Jeffrey B. DURHAM, Appellant.**

**Nos. 92–2288, 92–2412.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1992.

Decided Jan. 29, 1993.

Rehearing and Rehearing En Banc Denied in No. 92–2288 March 24, 1993.

Jacqueline Cook, Kansas City, MO, for appellant Searing.

Susan Hunt, Kansas City, MO, for appellant Durham.

Peter M. Ossorio, Asst. U.S. Atty., Kansas City, MO, for appellee.

Before FAGG, BEAM, and HANSEN, Circuit Judges.

BEAM, Circuit Judge.

Chet Searing and Jeffrey B. Durham were convicted in district court[1] of 1) conspiracy to distribute cocaine; 2) attempted possession of cocaine with the intent to distribute; and 3) the use of a firearm during and in relation to drug trafficking.[2] Durham was also convicted of assaulting federal agents.[3] Searing and Durham appeal on various grounds. We affirm.

1. The Honorable Joseph Stevens, Jr., Judge, United States District Court for the Western District of Missouri.

2. The statutes involved are 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; 18 U.S.C. § 2; and 18 U.S.C. § 924(c).

3. 18 U.S.C. § 111 prohibits the assault of federal officers engaged in the course of their lawful duties.

## I. BACKGROUND

Searing and Durham were housemates in Kansas City, Missouri. Durham went to California, ostensibly to visit his aunt and cousins. While in California he shipped a package of cocaine to himself via the United Parcel Service (UPS). Durham shipped the package to Christopher Rahberger's address, omitting any named recipient from the shipping label. Collect calls were made from Durham's aunt's phone to Searing's phone while Durham was in California. During his return trip from California, police searched Durham for drugs. When Searing picked Durham up at the Kansas City International airport on August 1, 1991, Durham told Searing about the search. He explained that the search had not worried him because he had shipped the package to himself. Durham then called UPS to trace his package which had not yet arrived.

An UPS employee noticed Durham's improperly labeled package which was also marked fragile. To guard against suspected internal pilfering, UPS decided to open the package. Inside was a nested series of packages. After discovering that the innermost package contained a white substance, UPS contacted the Drug Enforcement Administration (DEA). Testing revealed that the substance was cocaine. The DEA removed most of the cocaine and conducted a controlled delivery to the Rahberger residence on August 2, at 12:45 p.m. Christopher Rahberger signed for the package. Searing and his girlfriend arrived at the Rahberger residence at 1:37 p.m. Within eight minutes, Searing used the bathroom, made a phone call to Durham, obtained a gun, loaded it, and exited the residence with the loaded gun and the package. He placed the loaded gun in the pickup's cab and the package in the pickup's bed. He rearranged the package's placement at his girlfriend's suggestion, putting it under the pickup bed lining. At that point, DEA agents arrested the couple.

The DEA agents then searched the Rahberger residence. They found a loaded shotgun behind the front door, a loaded revolver in the bedroom, and a triple balance scale in the kitchen. During the search, Durham phoned and asked to speak to Rahberger. The answering DEA agent refused the request and an angry exchange followed. Forty-five minutes later Durham burst into the residence brandishing a loaded gun. The agents identified themselves, and subdued, searched, and released Durham.

Durham, Searing, and Rahberger were tried together. Before trial, Durham attempted to intimidate Searing's girlfriend, a potential witness against him. A fistfight or scuffle between Searing and Durham resulted. Searing's girlfriend testified at the trial; Searing did not. The jury convicted Durham and Searing of all counts charged. It reached no verdict with respect to Rahberger.

## II. DISCUSSION

### A. *Searing's Arguments*

For reversal, Searing argues: 1) that there was insufficient evidence to convict him on any of the charges; 2) that the district court's refusal to sever his trial from Durham's was an abuse of discretion that denied him due process and a fair trial; 3) that the district court denied him due process by admitting irrelevant and prejudicial evidence; and 4) that the district court's failure to order a mistrial or to give curative instructions *sua sponte* in response to the prosecutor's improper remarks was clear error which denied him a fair trial.

#### 1. Sufficiency of the Evidence

▮ When reviewing a jury verdict for sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and accept all reasonable inferences supporting the conviction. *United States v. Gaines,* 969 F.2d 692, 696 (8th Cir.1992); *United States v. Holt,* 969 F.2d 685, 687 (8th Cir.1992). The evidence need not exclude every reasonable hypothesis other than guilt. *United States v. Galvan,* 961 F.2d 738, 740 (8th Cir.1992). We must affirm if, on the appropriate view of the evidence, any rational trier of fact could have found guilt beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). There was ample direct and circumstantial evidence to support each of Searing's convictions.

■■■ To convict Searing of conspiracy under 21 U.S.C. §§ 841(a)(1) and 846, the government needed to prove Searing entered into an agreement with another person to distribute narcotics. *United States v. Gaines*, 969 F.2d at 696. The government did not need to show an overt act, *id.*, but was required to show more involvement or cooperation than Searing's mere knowledge of the conspiracy. *United States v. Duckworth*, 945 F.2d 1052, 1053 (8th Cir.1991). The government also did not need to show a formal agreement; showing a tacit understanding proven wholly by circumstantial evidence or by inferences from the parties' actions is sufficient. *United States v. Wint*, 974 F.2d 961, 968 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1001, 122 L.Ed.2d 151 (1993).

■■■ Durham and Searing shared a house, and Searing used money from Durham's drug activities for rent and car payments. While in California procuring the cocaine, Durham frequently called Searing's home collect. Searing picked Durham up from the airport when Durham returned from California. Durham bragged to Searing that although the police searched him for contraband during his trip he had not worried because he had shipped the package to himself. Wearing Durham's pager, Searing arrived at Rahberger's residence within an hour of the delivery of the cocaine. Searing entered the residence, telephoned Durham, retrieved and loaded Durham's gun, and then exited with the loaded gun and the package. Shortly after Searing failed to deliver the package to him, Durham arrived on the scene in Searing's car and burst into the premises brandishing Searing's loaded weapon.

The direct and circumstantial evidence recited above, and the inferences reasonably drawn from it, may not exclude every hypothesis but a narcotics conspiracy between Durham and Searing. However, the evidence of conspiracy is substantial and is more than ample to support Searing's conviction. *See United States v. Galvan*, 961 F.2d at 740–41; *United States v. Askew*, 958 F.2d 806, 811 (8th Cir.1992).

■■■ To convict Searing on the attempt charge, the government needed to prove that Searing intended to possess and distribute the cocaine, and that he took a substantial step toward that goal which step strongly corroborated his criminal intent. *Gaines*, 969 F.2d at 698. Searing knew Durham distributed drugs, knew that Durham sent a package of drugs to himself, went to retrieve the package shortly after it arrived, and armed himself with a loaded weapon before leaving with the package to deliver it to Durham. Viewing this evidence in the light most favorable to the verdict, a reasonable jury could easily have found beyond a reasonable doubt that Searing intended to possess and distribute the cocaine and that the substantial steps he took toward attaining his goal strongly corroborated his criminal intent (exiting a house with a just delivered package of drugs and a loaded weapon *is* strong corroboration of criminal intent).

Finally, we find the evidence to be overwhelming that Searing used a deadly weapon during the drug trafficking crimes for which he was convicted. Accordingly we also affirm Searing's 18 U.S.C. § 924(c) firearm conviction.

### 2. Severance

Searing argues that Durham's open hostility and threats to both him and his girlfriend mandated the severance of his trial from that of Rahberger and Durham.[4] He argues that Durham's conduct coupled with the failure to grant severance chilled his Fifth Amendment right to testify on his

---

**4.** Although neither party noted it, we have discovered that Searing raises this ground for severance for the first time on appeal. Therefore plain error analysis applies to this portion of Searing's severance argument. However, as we find the district court did not abuse its discretion, there is no error, plain or otherwise, to address.

own behalf and therefore severely prejudiced his defense. He also argues that the jury's inability to compartmentalize the evidence mandated severance.

■■■■ The decision of whether to sever defendants' trials is committed to the district court's sound discretion. *United States v. Wint*, 974 F.2d at 966. In the context of conspiracy, severance will rarely, if ever, be required. *Id.* at 965. We will uphold the district court's refusal to grant severance unless there is a showing of clear prejudice which indicates an abuse of discretion. *Id.* at 966.

■■■■ The mere fact that defendants are apparently hostile to one another is not grounds for severance. *United States v. Garrett*, 961 F.2d 743, 746 (8th Cir.1992). The evidence against Durham was overwhelming, regardless of any testimony by Searing. Thus, Durham had little motive to intimidate Searing. In fact, Searing's version of the events, that he was an innocent dupe picking up a package for a friend with no idea of the contents, was beneficial to Durham. If the jury believed Searing, the conspiracy charge against Durham might have failed. On the contrary, Searing's girlfriend's testimony was damaging to Durham. It was against her that Durham's threats were directed. The assertion that Durham's futile attempts to keep the girlfriend from testifying worked to keep Searing from testifying strains credulity. Further, the district court's in-court examination of Searing demonstrates that his decision not to testify was thoroughly considered and uncoerced. Finally, absent extraordinary circumstances, we find that the ordinary squabbles [5] between co-conspirators which may or may not influence a defendant's decision to testify do not constitute clear prejudice and therefore do not mandate severance.

■■■■ Searing also argues that the disparity between the evidence offered against Durham and that offered against him mandated severance. Disparity in the evidence against defendants does not require severance unless a defendant demonstrates real prejudice by showing that the jury was unable to compartmentalize the evidence. *Garrett*, 961 F.2d at 746. The jury here demonstrably compartmentalized the evidence by failing to convict Rahberger, one of Searing's co-defendants. Searing's contention to the contrary is without merit.

### 3. Admission of Evidence

The district court allowed Searing's neighbor to testify that she observed Searing bagging something in his kitchen which she thought might have been flour, sugar, or something else. Searing claims that the testimony was irrelevant and highly prejudicial, and that the district court abused its discretion by admitting it into evidence.

■■■■ The admissibility and relevance of evidence are within the sound discretion of the district court, and that discretion is particularly broad in the context of a conspiracy trial. *United States v. Davis*, 882 F.2d 1334, 1343 (8th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990). We review a district court's rulings on relevance and prejudice under an abuse of discretion standard. *United States v. Harris*, 956 F.2d 177, 180 (8th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 85, 121 L.Ed.2d 48 (1992). The district court ·acted well within its discretion in admitting the evidence.

■■■■ The evidence was neither irrelevant nor unduly prejudicial. Under Federal Rule of Evidence 401, relevant evidence is that having *any* tendency to prove or disprove the existence of a fact of consequence to the case. Fed.R.Evid. 401. The government needed to prove Searing's knowledge of and participation in a narcotics conspiracy. Although far from the only evidence the government presented on the issue, Searing's bagging of a substance which could have been narcotics was indeed relevant to his knowledge and participation in such an enterprise. The neighbor's inability to definitely identify the substance,

---

5. In the absence of at least a request for protection which the district court unjustifiably denies, we cannot find Searing's Fifth Amendment rights implicated by the out-of-court conduct of a co-defendant.

and her admitted hostility toward Searing and Durham,[6] went to the weight and credibility of her testimony, not its relevance. Nor was the somewhat equivocal testimony about the baggy unfairly prejudicial to Searing.[7] For the reasons stated above, we find the district court did not abuse its discretion in admitting the neighbor's testimony.

### 4. The Prosecution's Closing Argument

■ Searing's final argument is that the prosecutor made improper remarks during closing argument, and that the district court's failure to give a curative instruction *sua sponte* constituted reversible error.[8] The prosecutor asked the jury to infer from Durham's phone calls to Searing's residence while Durham was in California obtaining the cocaine and Searing's simultaneous large deposits to his checking account, that Searing was accumulating funds to pay for the cocaine. Searing's failure to use the accumulated funds to pay for the cocaine hardly renders the suggested inference impermissible. The interception of the cocaine is as plausible an explanation of the subsequent innocent disbursement of the funds, as is the lack of any intention to ever use the funds for the cocaine. The decision as to what inference to draw from the facts noted by the prosecution was before the jury, and the prosecutor's remarks were not improper.

### B. *Durham's Arguments*

Durham argues that there was insufficient evidence to convict him either of using a gun during a drug trafficking offense or of assaulting a federal officer. He also argues that he was denied his theory of defense by the district court's jury instructions.

### 1. Insufficiency of the Evidence

The 18 U.S.C. § 924(c) charge required that the government prove Durham used a deadly weapon during and in relation to a drug trafficking crime. Viewing the evidence in the light most favorable to the verdict,[9] a reasonable jury could easily believe that when Durham arrived at the Rahberger residence, he was trying to recover the cocaine. Bursting through the front door, brandishing a loaded weapon, in an attempt to rectify a drug delivery gone awry is clearly using a deadly weapon during a drug trafficking offense. Durham's further argument that there is insufficient evidence that he assaulted federal officers with a dangerous weapon is devoid of merit, and we will not consider it further.

### 2. The Disputed Jury Instruction

■ Durham argues that the district court erred in not giving the jury an instruction directing that his assault on federal officers is excused if he lacked any criminal intent; Durham contends that he reasonably believed he was threatened with an intentional harm from a private individual, and he responded with reasonable force to the perceived threat. *See United States*

---

**6.** The neighbor admitted on cross-examination that Searing and his friends often kept her up until 2 a.m. playing basketball and that Durham enjoyed cursing at the neighbors and scaring them.

**7.** Searing argues on appeal that the evidence should have been excluded under Federal Rule of Evidence 403. However, at trial he merely objected on the grounds of relevance, failing to alert the district court specifically to his Rule 403 concerns. We therefore review such concerns for plain error only, but note that we would affirm the admission of this evidence under the abuse of discretion standard which would normally apply. The district court did weigh the probative value of the testimony against its prejudicial effects on Searing, cutting

the testimony off at the point the court determined it to risk unfair prejudice. Trial transcript, vol. III, at 107–108. The district court therefore neither abused its discretion nor committed plain error in admitting this testimony.

**8.** Since Searing failed to object to the prosecutor's argument or to move for a mistrial on those grounds, we would normally review the district court's action for plain error. Fed. R.Crim.P. 52(b). However, since we do not find the closing remarks improper, we need not address whether the alleged error rises to the level of plain error.

**9.** In reviewing Durham's insufficiency claim, we use the same standard of review set out in the discussion of Searing's insufficiency claims.

*v. Feola,* 420 U.S. 671, 684–86, 95 S.Ct. 1255, 1263–65, 43 L.Ed.2d 541 (1975) (defendant must have some criminal intent to support a conviction under 18 U.S.C. § 111). While a defendant is "entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor," *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988), we need not decide whether Durham's proposed instruction states a recognized defense to assaulting a federal officer because, on these undisputed facts, no reasonable jury could find in his favor.

■ Durham phoned the Rahberger residence while the DEA agents were searching it. The answering agent told Durham that Rahberger could not come to the phone. The agent refused to identify himself unless Durham identified himself. Durham threatened to "kick" the agent's "ass" if the agent "got smart" with him. The agent invited Durham to do so. Approximately an hour later Durham arrived at the residence, noted cars he did not recognize parked on the street, kicked open the front door, and pointed a loaded gun at the first person he encountered. Durham's claim that his phone conversation and the presence of unrecognized cars in the street operated to render his actions reasonable and without criminal intent is patently ludicrous. No reasonable jury could find otherwise. Since there is no evidence that could support Durham's theory of defense, the district court correctly refused to give the requested instruction.

## III. CONCLUSION

For the reasons stated above, we affirm the district court's judgment in all respects.