UNITED STATES of America, Appellee,

v.

Carlos CASAS, Appellant.

UNITED STATES of America, Appellee,

v.

Efren CASAS, Appellant.

Nos. 92–2578, 92–2582.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1993.

Decided July 22, 1993.

Rehearing Denied Sept. 3, 1993.

Katheryn B. Goudy, Des Moines, IA, argued, for appellants.

Lester A. Paff, Asst. U.S. Atty., Des Moines, IA, argued, for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HENLEY, Senior Circuit Judge.

Carlos Casas and Efren Casas (collectively defendants) appeal from final judgments entered in the district court,[1] upon jury verdicts, finding them guilty of involvement in a cocaine conspiracy. Both defendants were found guilty of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and distributing cocaine in violation of 21 U.S.C. § 841(a)(1). Both defendants received substantial prison sentences; Carlos Casas was sentenced to 174 months and Efren Casas was sentenced to 168 months. The district court also ordered two pieces of property, one owned by Carlos Casas and one owned by Efren Casas, to be forfeited pursuant to 21 U.S.C. § 853. Defendants challenge the convictions, sentences, and forfeitures. We affirm.

**I.**

This case involves a conspiracy to distribute cocaine from Chicago, Illinois to Des Moines, Iowa. The government's evidence showed that defendants sold cocaine in Chicago and Des Moines, usually to Fernando and Cristobal Hernandez. The Hernandezes distributed it in Des Moines with the help of Jose Aguilar and William Vandermark.

A key witness for the government was coconspirator Fernando Hernandez. He testified that his relationship with the Casas brothers began in January 1988 when he purchased a half-ounce of cocaine from Carlos Casas. In the next six days, he made four separate purchases totalling eleven ounces. Twelve days later, he purchased a half-kilogram (18 ounces) and took half of that amount to Des Moines to sell. Three weeks later, he purchased a kilogram. Most of these transactions occurred in the body shop owned by Efren Casas on Kedzie Street in Chicago (the Chicago body shop). Fernando Hernandez testified that he purchased approximately thirty kilograms from the Casases from 1988 until their relationship ended in 1991.

Chicago Police Officer Alfonso Bautista testified that he arrested Efren Casas in August 1987 for attempting to sell him a half-ounce of cocaine at the Chicago body shop. Evidence of the arrest was admitted at trial over defendants' objections.

Cristobal Hernandez, who was at one time in the drug business with his brother Fernando, also testified about his drug transactions with Carlos Casas. He claimed he began buying cocaine from Carlos Casas in the winter of 1987. He also testified that during one drug transaction Efren Casas brought the cocaine to Carlos Casas from another location. Cristobal Hernandez testified that he purchased approximately ten to fifteen kilograms from Carlos Casas from 1987 until 1991.

Jose Aguilar and William Vandermark worked in the drug trade for Fernando Hernandez. Aguilar met Carlos Casas in the

1. The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

summer of 1990 at Hernandez's mother's house in Des Moines. He saw Carlos Casas deliver to Fernando Hernandez two kilograms of cocaine at that house on two separate occasions, once in September 1990 and once in November 1990. Vandermark testified that he received two kilograms of cocaine from Carlos Casas in Des Moines on two separate occasions, once at Vandermark's apartment in late 1990 and once at Fernando Hernandez's mother's house in early 1991.

Agent Andre Kellum of the federal Drug Enforcement Agency (DEA) testified that in May 1990 he negotiated with Carlos Casas at the Chicago body shop for the purchase of three kilograms of cocaine. Kellum and Carlos Casas discussed the deal alone in the office of the body shop, and Kellum did not recall if Efren Casas was present in the garage portion of the body shop at the time. Kellum never actually purchased any cocaine from Carlos Casas.

The dealings between the Casases and Hernandezes soured sometime after Fernando Hernandez purchased nine kilograms of cocaine from Carlos Casas in December 1990 for $226,250.00. Two of the nine kilograms were of inferior quality, and Fernando Hernandez and Aguilar met with both Carlos and Efren Casas to negotiate an exchange at a body shop on N.W. 135th Street in Maywood, Illinois (the Maywood body shop). The Casases agreed that they would exchange only one of the bad kilograms, and this effectively ended the relationship.

Carlos Casas was arrested in October 1991 at the Chicago body shop. A search of the body shop revealed no drugs or guns, but a notebook containing Fernando Hernandez's phone number was found. DEA Agent Steve Hummel, who arrested Carlos Casas, testified that he asked Casas "where did he keep the cocaine when he had cocaine, and Carlos Casas told me that he would page Manuel, and Manuel would bring it."

The jury convicted Carlos Casas of three counts of distributing cocaine; Efren Casas of two counts of distributing cocaine; and both defendants of conspiracy to distribute cocaine. On appeal, defendants argue that the district court erred in (1) admitting evidence of Efren Casas's 1987 arrest; (2) refusing to instruct the jury to determine the quantity of cocaine attributable to the defendants; (3) determining the quantity of cocaine attributable to the defendants at sentencing; and (4) applying the preponderance of the evidence standard of proof during the forfeiture proceedings.

## II.

■ Defendants argue that the district court erred in admitting evidence that in August 1987 Efren Casas was arrested for selling cocaine to Chicago Police Officer Alfonso Bautista (the 1987 controlled-buy). They contend that this controlled-buy predated as a matter of law the charged conspiracy, and that it is an inadmissible "prior bad act" under Fed.R.Evid. 404(b).

Defendants first objected to the introduction of this evidence at a pre-trial conference. They claimed the 1987 controlled-buy was not part of the charged conspiracy and that it had "nothing to do with any of the witnesses or any of the other defendants charged in this conspiracy." The government argued that the controlled-buy was within the scope of the conspiracy, and alternatively, that it was admissible as a prior similar act, under Fed.R.Evid. 404(b), to show knowledge of cocaine dealing and intent to deal cocaine.

The district court, at the pre-trial conference, found that the evidence was clearly admissible to show knowledge and intent—with a limiting instruction to the jury—but also noted that the evidence may be admissible "for any purpose." The court stated:

> I can't tell whether to limit until I know more about the evidence.... I will welcome any requests for limiting instructions if the evidence is only being offered for some narrower purpose than any purpose under the issues, but at this point there hasn't been a sufficient showing that it would be inadmissible for any purpose.

Defendants renewed their objection at trial, both before and after Officer Bautista's testimony, and the district court overruled both objections. Defendants did not request a limiting instruction, the district court did not give a limiting instruction, and the evidence

of the 1987 controlled-buy was admitted as relevant evidence of the crimes charged.

On appeal defendants first argue that it was error for the jury to consider evidence of the 1987 controlled-buy as evidence of the conspiracy because this transaction occurred before the charged conspiracy, or any other conspiracy which the government may have proven at trial. They claim that while the government may have shown a conspiracy existed in 1989 or 1990, the government presented no evidence of an agreement between the defendants in 1987. Moreover, they claim that the only evidence of any wrongdoing by either defendant in 1987 is Efren Casas's drug sale to a police officer in August of that year.

■ In the indictment, the government alleged that Carlos Casas and Efren Casas conspired to distribute cocaine "[f]rom on or about August 1, 1987 to April 15, 1991." To convict defendants of conspiracy under 21 U.S.C. § 846, the government must prove that defendants entered into an agreement to distribute cocaine; unlike the general conspiracy statute, 18 U.S.C. § 371, no overt act in furtherance of the conspiracy is required here. *United States v. Gaines*, 969 F.2d 692, 696 (8th Cir.1992) (citing *United States v. Covos*, 872 F.2d 805, 809–10 (8th Cir.), *cert. denied*, 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989)). "The government did not need to show a formal agreement; showing a tacit agreement by understanding proven wholly by circumstantial evidence or by inferences from the parties' actions is sufficient." *United States v. Searing*, 984 F.2d 960, 964 (8th Cir.1993) (citations omitted). The government must show more, however, than defendants' mere knowledge of the conspiracy; it must establish some degree of knowing involvement and cooperation. *Id.*

■ We review a district court's evidentiary ruling for abuse of discretion, recognizing that "[t]he trial court exercises 'considerable discretion' in determining the evidence to be admitted, and that discretion is particularly broad in a conspiracy trial." *United States v. Davis*, 882 F.2d 1334, 1343 (8th Cir.1989) (citations omitted), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990). Here, the defendants challenge the admission of the 1987 controlled-buy because they claim there was no proof that an agreement to distribute cocaine existed at the time of the arrest. We believe defendants have misconstrued the government's theory of the case. The government presented the 1987 controlled-buy as evidence that Efren Casas and Carlos Casas had agreed to distribute cocaine.

The government offered proof that Carlos Casas began selling cocaine to Cristobal Hernandez in the winter of 1987, and to Fernando Hernandez in January 1988. In both instances, although the first transactions did not occur at the Chicago body shop, the deals soon began to take place in the shop itself. When this evidence is taken together with the evidence that Efren Casas attempted to sell cocaine to Officer Bautista in August 1987 in that same body shop, a reasonable inference is created that Carlos and Efren Casas had an agreement—or at least a tacit understanding—in August 1987 that they were going to sell cocaine from the Chicago body shop. The government sought to show that Officer Bautista was a customer buying the drugs that Carlos and Efren Casas had conspired to distribute. Because the 1987 controlled-buy occurred within the time period of the charged conspiracy, within the same relative time period as the drug transactions with the Hernandezes, and in the same body shop where many subsequent drug transactions occurred, we cannot say that the admission of the evidence of Efren Casas's 1987 arrest as evidence of the conspiracy was an abuse of discretion.

Defendants' second argument on this issue is that the 1987 controlled-buy is an inadmissible "prior bad act" under Fed.R.Evid. 404(b). Because we hold that the 1987 controlled-buy was properly admitted as evidence of the charged conspiracy, we do not address defendants' argument that this evidence was improperly admitted as a "prior bad act" in violation of Fed.R.Evid. 404(b). *See United States v. Jones*, 880 F.2d 55, 59 (8th Cir.1989) ("The evidence thus went directly to the crime charged and fell outside the purview of 'prior bad acts.' " (citations omitted)).

## III.

 Defendants next argue that the district court erred in refusing to instruct the jury to determine the quantity of cocaine involved in the conspiracy and distribution counts. "[A] defendant is entitled to a jury instruction if the request is timely, the evidence supports the instructions, and the proffered instruction correctly states the law." *United States v. Sanders,* 834 F.2d 717, 719 (8th Cir.1987) (citation omitted). When reviewing a challenge to the jury instructions, we recognize that the district court has wide discretion in formulating the instructions and will affirm if the entire charge to the jury, when read as a whole, fairly and adequately contains the law applicable to the case. *Id.* (citations omitted).

Defendants requested the district court to instruct the jury to "determine the specific amount of controlled substance and include that amount on the verdict form." They claim that the quantity of cocaine involved in each separate count is an "essential element" of the offense charged. We rejected a similar argument in *United States v. Wood,* 834 F.2d 1382, 1388–90 (8th Cir.1987). In addition, we have explicitly held that when determining the statutory mandatory minimum sentence and the base offense level under the federal Sentencing Guidelines, "[t]he jury determines guilt, not quantity." *United States v. Simmons,* 964 F.2d 763, 771 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992); *see also United States v. Candie,* 974 F.2d 61, 64 (8th Cir.1992) ("Quantity is an issue for the sentencing judge; the government must prove quantity at sentencing by a preponderance of the evidence."). Therefore, the district court did not err in refusing to instruct the jury to determine the quantity of cocaine involved in the offenses.

## IV.

 Defendants also argue that the district court improperly determined the quantity of drugs to be used in calculating their base offense level under the Sentencing Guidelines. They argue that the district court improperly attributed 45 kilograms of cocaine to them based on the unreliable testimony of Fernando and Cristobal Hernandez. They claim the Hernandezes' testimony regarding quantity lacks "sufficient indicia of reliability" under § 6A1.3 of the Sentencing Guidelines. *See Simmons,* 964 F.2d at 772–76.

The district court's determination of the quantity of cocaine involved is a factual finding which we review under the clearly erroneous standard. *Id.* at 773. Moreover, in this context, the "district court's findings as to the credibility of a witness are 'virtually unreviewable on appeal.'" *United States v. Adipietro,* 983 F.2d 1468, 1472 (8th Cir.1993) (quoting *Candie,* 974 F.2d at 64).

Fernando Hernandez testified that he received approximately thirty kilograms of cocaine, Cristobal testified that he received between ten and fifteen kilograms of cocaine, Jose Aguilar testified to witnessing transactions involving at least four kilograms of cocaine, and William Vandermark testified that he received four kilograms of cocaine during the course of the conspiracy. The district court recognized that the forceful cross-examination of these witnesses was at times effective, but stated: "On balance I find the credibility of the witnesses who testified when called by the government was sufficient to establish that no less than 45 kilograms of cocaine was involved in this conspiratorial action to get cocaine into Iowa." We find that none of the factors present in *Simmons*[2] are present in the case before us and we cannot say the district court's findings are clearly erroneous.

## V.

 Defendants also argue that the district court erred in applying the "preponderance of the evidence" standard of proof—instead of the "beyond a reasonable doubt" standard—at the criminal forfeiture proceedings. The government argues that we are

---

2. In *Simmons,* the district court, without making any specific credibility findings, merely accepted the facts as set forth in a conclusory and ambiguous Presentence Report (PSR) which relied on the testimony of a witness who was shown to have lied at trial. 964 F.2d at 774–77.

without jurisdiction to hear this issue because defendants failed to file a notice of appeal from the forfeiture orders.

The government alleged in the indictment that Carlos and Efren Casas "used, or intended to use, ... [certain] real property to commit or facilitate the said controlled substance violations." Before trial, defendants agreed to have the criminal forfeiture issues tried to the court, if necessary, after the jury had determined guilt. After the jury rendered its guilty verdicts on April 4, 1992, the district court scheduled a sentencing hearing to consider any objections to the Presentence Report, and to conduct the forfeiture proceedings.

On June 24, 1992, the sentencing hearing was held. The defendants were sentenced and the judgments of conviction were filed on that date. On June 30, 1992, each defendant filed a notice of appeal indicating that he appealed from the order of the district court dated June 24, 1992. At the June 24 hearing, the court also received additional evidence and heard counsel's arguments regarding the forfeitures. The district court did not rule on the forfeiture issues at that time, but instead directed the parties to submit briefs discussing the issue of which standard of proof was applicable to the forfeiture proceedings.

On August 31, 1992, the court issued an order holding that the preponderance of the evidence test was the proper standard and declaring that the properties were forfeitable under § 853(a)(2). On September 24, 1992, the district court issued two separate "Order[s] of Forfeiture," one for each defendant, which "condemned and forfeited [the property] to the United States of America." Defendants did not file another notice of appeal from those orders.

 Our cases make clear that "the timely filing of a notice of appeal is both mandatory and jurisdictional." *United States v. Anna*, 843 F.2d 1146, 1147 (8th Cir.1988). The government argues that we are without jurisdiction to address this forfeiture issue because defendants failed to file a notice of appeal from either the August 31, 1992, or the September 24, 1992, forfeiture orders. The only notice of appeal filed by the defen-

dants was the notice filed on June 30, 1992. The government argues that this notice of appeal serves only to preserve the defendants' right to appeal their convictions and sentences. The government notes that in its "Order[s] of Forfeiture" dated September 24, 1992, the district court explicitly stated:

> 3. Pursuant to Federal Rule of Criminal Procedure 32(b)(2), this Order is a final forfeiture judgment as to these Defendants. The Defendants are hereby notified that ancillary forfeiture proceedings shall be allowed to proceed unless a specific appeal is taken from this order, and unless a stay of execution is granted pursuant to Federal Rule of Criminal Procedure 38(e).

Defendants argue that the June 30, 1992 notice of appeal is sufficient. They contend that a separate notice of appeal from a forfeiture order is not necessary where the forfeiture occurs during a sentencing proceeding. They cite *United States v. Sandini*, 816 F.2d 869, 873 n. 5 (3d Cir.1987), for the proposition that "[i]n reality, forfeiture is part of the sentence; consequently an appeal from the conviction measured from the date of the judgment includes the forfeiture." The court in *Sandini* also stated that "we do not believe a separate notice of appeal from a forfeiture order is necessary *in the circumstances of this case, where the forfeiture was ordered before sentence was imposed.*" *Id.* (emphasis added).

We are faced with a different situation in this case. Here, the forfeiture was ordered nearly three months after the sentence was imposed. In this case, at the request of the defendants, the forfeiture proceedings were conducted without a jury after the trial. Other federal courts of appeals have held in very similar circumstances that the failure to file a notice of appeal from a post-conviction forfeiture proceeding does not preserve the issue for appeal. *See, e.g., United States v. Kopituk*, 690 F.2d 1289, 1343 (11th Cir.1982) (discussing criminal forfeiture in a RICO case, presumably pursuant to 18 U.S.C. § 1963(a), the court held that defendants "were required to file a separate notice of appeal from the [post-conviction] forfeiture

judgment."), *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983); *United States v. Martino,* 681 F.2d 952, 953 (Former 5th Cir.1982) (en banc) (where defendant failed to file a notice of appeal from a forfeiture order under 18 U.S.C. § 1963(a), appellate court was without jurisdiction to hear forfeiture issues), *aff'd sub nom. Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983).[3]

We note that in *United States v. Benevento,* 836 F.2d 129, 130 (2d Cir.1988) (per curiam), the Third Circuit treated the judgment of conviction and the judgment of forfeiture as two separate appealable orders. In *Benevento,* after the defendant was convicted on May 27, 1987, he filed a notice of appeal from that order and the court of appeals addressed his conviction and sentence. In addition, after the district court entered its forfeiture order on July 15, 1987, the defendant filed another notice of appeal and the court of appeals addressed his arguments regarding the forfeiture in a separate appeal. *Id.*

■ Defendants also argue that their failure to file a notice of appeal should be considered "excusable neglect" because the defendants' trial counsel was attempting to withdraw from the case during the time when the forfeiture order was entered. Pursuant to Fed.Rule App.P. 4(b), "the district court may ... extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed in this subdivision." Defendants never requested an extension of time in the district court, and the permissible extension has long since expired.

Because defendants failed to file a notice of appeal from the forfeiture judgments, we have no jurisdiction to consider their challenges to those judgments.

The judgments of the district court are affirmed.

---

**3.** The en banc court in *Martino* cites to a footnote in the panel opinion in that case, notwithstanding the fact that that portion of the panel opinion had been vacated. 681 F.2d at 953 n. 10 (citing 648 F.2d 367, 407 n. 19 (1981)).. Indeed, that portion of the panel opinion is not even printed in the *Federal Reporter.* The panel's slip opinion, however, can be found on WESTLAW and LEXIS. The panel opinion held that "Guarino belatedly raises the [forfeiture] issue in his brief on appeal of his conviction. This is not sufficient to vest appellate jurisdiction. The order of forfeiture is a different judgment from the sentence and commitment order. A separate notice of appeal was required." 648 F.2d 367, n. 19 (5th Cir.1981). The en banc court did not disturb that portion of the panel opinion: "This reversal [by the panel] did not affect the forfeiture order against defendant Guarino, as he did not file a notice of appeal from that order." 681 F.2d at 953 n. 10.