# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2089

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| John Lee Skinner, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 10, 2005
Filed: January 6, 2006

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

John Lee Skinner was convicted by a jury on two counts: (1) conspiracy to possess with intent to distribute and distribute a controlled substance (crack cocaine) and (2) possession with intent to distribute a controlled substance (crack cocaine). The district court[1] sentenced Skinner to the mandatory minimum of 120 months' imprisonment. On appeal, Skinner challenges the sufficiency of the evidence used to convict him and the seven-month delay between his arrest and indictment in the

_____

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

Burleigh County State Court and his indictment on federal charges. Because we find Skinner's claims to be without merit, we affirm.

## I. *Facts*

We view the facts in a light most favorable to the verdict. In February 2004, John Skinner traveled from Kansas City, Kansas, to Bismarck, North Dakota, to distribute crack cocaine. After arrival, Skinner began selling crack cocaine with assistance from Kerrie Wolf, who helped him find customers and a place to stay. Skinner met crack-cocaine suppliers at the bus station in Bismarck. Skinner returned drug sale proceeds to Kansas City through couriers who would travel on the bus. The last courier to arrive in Bismarck was Eric Johnson. Johnson stayed with Skinner and Wolf in Wolf's mobile home. Skinner continued to sell crack cocaine and gave the money to Johnson. On April 6, 2004, local police searched Wolf's mobile home where Skinner lived. Police discovered a plastic bag containing 51.38 grams of crack cocaine in a false beam in the living room. Skinner, although not present for search, was arrested, and charged in Burleigh County State Court.

Skinner was indicted in federal court on October 1, 2004, after which all state charges were dropped. The two-count indictment charged Skinner with (1) conspiracy to possess with intent to distribute and distributing a controlled substance (crack cocaine) and (2) possession with intent to distribute a controlled substance (crack cocaine). At trial, following the close of the government's case, Skinner moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Skinner's motion was denied. The jury found Skinner guilty on both counts. The district court sentenced Skinner to 120 months' incarceration, the mandatory minimum.

## II. *Discussion*
### A. *Sufficiency of the Evidence*

Skinner raises two issues on appeal. First, Skinner contends that the evidence did not show he intentionally and knowingly possessed crack cocaine, a necessary

element for both counts, which the government must prove beyond a reasonable doubt. Skinner claims he never possessed either the crack cocaine or any of the other exhibits admitted into evidence at trial. Skinner also challenges the credibility of government witnesses Kerrie Wolf, Eric Johnson, Twyla Rae Hanson, and Heather Mattson. He contends their testimony should not have been believed because it was obtained by plea agreements and was uncorroborated by other evidence admitted during the trial.

Skinner further argues that the testimony of Daniel Ortega, Special Agent for the Drug Enforcement Agency, could have only been interpreted to mean that Skinner was never seen with the crack cocaine admitted into evidence at trial. Skinner notes testimony that at the time of the search, Skinner had left in a car supposedly with crack cocaine to make a delivery. However, Skinner points out that Steve Scheuer, a patrol officer for the Bismarck police department, testified that police observed Skinner from the time he left the mobile home until they pulled him over, yet no crack cocaine was found in the car. Consequently, Skinner argues that the testimony and evidence offered at trial was insufficient to sustain a conviction on counts one and two, and a judgment of acquittal should be entered.

"We review de novo the question of whether the evidence is sufficient to support a conviction." *United States v. Vazquez-Garcia*, 340 F.3d 632, 636 (8th Cir. 2003). "Only if 'no interpretation of the evidence . . . would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt' will we reverse a jury's verdict on the grounds of insufficient evidence." *United States v. Morton*, 412 F.3d 901, 904 (8th Cir. 2005) (quoting *United States v. Galvan*, 961 F.2d 738, 740–41 (8th Cir. 1992)).

In this case, there is, in fact, sufficient evidence to support the jury's verdict. At least four witnesses testified about Skinner's involvement in the sale of crack

cocaine.[2] Skinner's argument is not so much that evidence is lacking but that the evidence presented lacked credibility. We have held on numerous occasions that credibility is properly the province of the jury. *E.g., United States v. Osuna-Zepeda*, 416 F.3d 838 (8th Cir. 2005) (holding that there was sufficient evidence to uphold the appellant's conviction because credibility is an issue for the jury to decide, and the jury was aware that the cooperating witness had several felony convictions and that he signed a plea agreement with the government in which he promised to cooperate). Furthermore, the testimony of the co-conspirators was corroborated by physical evidence. In light of the ample evidence in support of the jury verdict, we find that Skinner's challenge to the sufficiency of the evidence is without merit.

## B. *Pre-Indictment Delay*

Second, Skinner asserts that his due process right under the Fifth Amendment was violated during his incarceration in the Burleigh County Detention Center on state charges. Skinner was held on state charges from April 6, 2004 until October 1, 2004. The state dropped its charges on that date, and the United States immediately indicted Skinner on identical charges. Skinner alleges that his incarceration in county jail involved a plan between state and federal prosecutors to hold him while the

---

[2]Kerrie Wolf testified that Skinner and another individual named "CJ" arrived in Bismarck with crack cocaine, which was sold by Skinner and herself. CJ held the crack, and it was Skinner's responsibility to sell the crack. Three other men arrived in Bismarck at other times with additional drugs, which Skinner sold. Twyla Hanson testified that she purchased crack cocaine from Skinner five or six times. When she arrived at Wolf's trailer for crack cocaine, Skinner would go to the back room and obtain crack cocaine from someone else. Also, when Hanson first met Skinner, he was with a man named "Yellow." Skinner and Yellow informed Hanson that they had crack cocaine available. Eric Johnson testified that he transported crack cocaine to Bismarck for sale, and he gave a portion of the drugs to Skinner and Wolf so that they could help him sell it. Lastly, Heather Mattson testified that she purchased crack cocaine from Skinner and Wolf five or six times a day. She witnessed Skinner sell crack cocaine to others, and she assisted Skinner in selling crack cocaine. CJ would keep the crack cocaine and would dole it out to Skinner to sell.

United States developed its case against him. Skinner argues that by keeping him incarcerated on state charges for six months, the United States was able to work with the state on his prosecution while delaying his federal speedy trial right. This collusion delayed his speedy trial right from starting to run for more than six months. As a result, Skinner claims that the delay gave the federal government the advantage of gathering evidence and testimony against him while he was in jail on state charges. Further, Skinner contends that by keeping him in detention on state charges, the federal government was able to circumvent the limits and exclusions in 18 U.S.C. § 3161.[3] Thus, Skinner submits that he was unfairly prejudiced by the lapse of time and asks that this court dismiss the two-count indictment against him.

"The Due Process Clause of the Fifth Amendment protects a criminal defendant against unreasonable pre-indictment delay." *United States v. Sturdy*, 207 F.3d 448, 451–52 (8th Cir. 2000). In order to show that his due process rights were violated, Skinner must establish that (1) the delay resulted in actual and substantial prejudice to the presentation of his defense and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him. *Id*. at 452. "Alleged prejudice is insufficient to establish a due process violation if it is 'insubstantial, speculative or premature.'" *United States v. Grap*, 368 F.3d 824, 829 (8th Cir. 2004) (quoting *United States v. Golden*, 436 F.2d 941, 943 (8th Cir. 1971)). Skinner must show that he has been actually and substantially prejudiced by the delay, and the court will inquire into the reasons for delay only where actual prejudice has been established. *Sturdy*, 207 F.3d at 452. "To prove actual prejudice, a defendant must

_____

[3]18 U.S.C. § 3161(b) states that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges . . . . In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment . . . ."

specifically identify witnesses or documents lost during delay properly attributable to the government . . . it is the defendant's burden to show that the lost testimony or information is not available through other means." *Id.*

Based upon our review of the record, we hold Skinner failed to establish that he was actually prejudiced as a result of any pre-indictment delay. In fact, Skinner has presented no evidence that his defense strategy would have been different if he had been indicted sooner or that any evidence became unavailable because of the time lapse. Moreover, Skinner states no factual basis for his claim that the state and federal authorities colluded with the purpose of denying him a constitutional right. The record in this case is devoid of any evidence that the government intentionally delayed seeking an indictment to gain any tactical advantage, but conversely, the record shows that the government sought an indictment when it completed its investigation. *United States v. Sims*, 779 F.2d 16, 17 (8th Cir. 1985). As Skinner has not demonstrated any actual or substantial prejudice to his defense, his Fifth Amendment pre-indictment delay claim fails.

For the foregoing reasons, we affirm Skinner's conviction.

_____