UNITED STATES of America,
Plaintiff,

v.

Angela JOHNSON, Defendant.

Nos. CR 00–3034–MWB,
CR 01–3046–MWB.

United States District Court,
N.D. Iowa,
Central Division.

June 21, 2002.

Patrick J. Reinert, Charles J. Williams, U.S. Attorney's Office, Northern District of Iowa, Cedar Rapids, IA, for Plaintiff.

Alfred E. Willett, Terpstra, Epping & Willett, Cedar Rapids, IA, Dean A. Stowers, Rosenberg Law Firm, Des Moines, IA, Thomas P. Frerichs, Frerichs Law Office PC, Waterloo, IA, Patrick J. Berrigan, Watson & Dameron, LLP, Kansas City, MO, Robert R. Rigg, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING APPEALS OF ORDERS BY MAGISTRATE JUDGE

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ............................................................. 984
 A. Indictments, Arrest, And Incarceration ................................ 984
 B. The Motion For A Bill Of Particulars ................................. 986
 C. The Motion For Transfer To A Different Facility ..................... 987

II. LEGAL ANALYSIS .......................................................... 987
 A. Standard of Review ................................................... 988
 B. Appeal Of The Ruling On Johnson's Motion For A Bill Of Particulars ..... 989

1. *Arguments of the parties* ........................................ 988
2. *Applicable standards* ........................................ 990
 a. *Rule 7(f)* ........................................ 990
 b. *Purpose of a bill of particulars* ........................................ 990
 c. *When is a bill of particulars appropriate?* ........................................ 991
 d. *Other circumstances making a bill of particulars unnecessary* ..... 994
3. *Did Judge Zoss apply the wrong legal standard?* ........................................ 995
4. *Was Judge Zoss's order clearly erroneous?* ........................................ 995
 a. *Order to identify co-conspirators, supervisees, and supervisors* ..... 995
 b. *Failure to order further disclosures* ........................................ 1001
C. *Appeal Of The Ruling Denying Johnson's Motion For Transfer* ........... 1004
1. *Arguments of the parties* ........................................ 1004
2. *Interference with counsel and preparation of defense* ................ 1005
3. *Conditions of confinement* ........................................ 1007

*III.* *CONCLUSION* ........................................ 1008

This matter comes before the court pursuant to appeals of two orders of a magistrate judge. First, both parties appeal an order of the magistrate judge granting in part and denying in part the defendant's motion for a bill of particulars concerning the charges in the second indictment against her. Those charges are five counts of killing witnesses while engaging in a drug-trafficking conspiracy, and five counts of killing witnesses in furtherance of a continuing criminal enterprise (CCE). Second, the defendant appeals the magistrate judge's order denying her motions, in both cases against her, for transfer to a different facility. The defendant sought such a transfer, because she asserted that incarceration in the present facility imposes excessive travel on her attorneys, thus interfering with her ability to help prepare her defense, and that the present facility also impermissibly subjects her, as a pre-

trial detainee, to conditions amounting to "punishment." On the appeals of the parties, the court must determine whether the magistrate judge's decisions were clearly erroneous or contrary to law.

## I. INTRODUCTION

### A. Indictments, Arrest, And Incarceration

Defendant Angela Johnson is being held in the Linn County Jail pending trial on two separate indictments involving charges that grew out of a continuing investigation of the criminal conduct, including drug trafficking, of Johnson's sometime boyfriend, Dustin Honken, and his associates. The first seven-count indictment against Johnson, in Case No. CR 00–3034–MWB, filed on July 26, 2000, charges her with five counts of aiding and abetting the murder of witnesses, one count of aiding and abetting the solicitation of the murder of witnesses, and one count of conspiracy to interfere with witnesses.[1] The second in-

---

**1.** More specifically, **Count 1** of this first federal indictment is the first of the counts charging what was described above, for shorthand purposes, as "aiding and abetting the murder of a witness." It charges that, on or about July 25, 1993, Johnson aided and abetted another individual to willfully, deliberately, maliciously, and with premeditation and malice aforethought, unlawfully kill Gregory Nicholson with the intent to prevent Gregory Nicholson from attending or providing testimony at an official proceeding in the Northern District of Iowa—specifically, a criminal

prosecution of Dustin Honken on a charge of conspiracy to distribute methamphetamine or to possess methamphetamine with intent to distribute it—and to prevent Gregory Nicholson from communicating to a law enforcement officer of the United States information relating to the commission or possible commission of federal offenses, specifically, distribution of methamphetamine and conspiracy to distribute methamphetamine, which killing is a first-degree murder, as defined by 18 U.S.C. § 1111, all in violation of 18 U.S.C.

§§ 1512(a)(1)(A), 1512(a)(1)(C), 1512(a)(2)(A), 1111, and 2.

**Count 2** of the indictment is the second charge of "aiding and abetting the murder of a witness." It charges that, on or about July 25, 1993, Angela Johnson aided and abetted another individual to willfully, deliberately, maliciously, and with premeditation and malice aforethought, unlawfully kill Lori Duncan (who was Gregory Nicholson's girlfriend) with the intent to prevent Lori Duncan from communicating to a law enforcement officer of the United States information relating to the commission or possible commission of federal offenses—specifically, tampering with Gregory Nicholson, a federal witness, and unlawful contact with Gregory Nicholson in contempt of court by violation of conditions of pretrial release by Dustin Honken—which killing was a first-degree murder, as defined by 18 U.S.C. § 1111, all in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(1)(C), 1512(a)(2)(A), 1111, and 2.

**Counts 3** and **4** of the indictment are the third and fourth charges of "aiding and abetting the murder of a witness." They charge that, on or about July 25, 1993, Angela Johnson aided and abetted another individual to willfully, deliberately, maliciously, and with premeditation and malice aforethought, unlawfully kill Kandi Duncan and Amber Duncan (Lori Duncan's daughters), respectively, with the intent to prevent them from communicating to a law enforcement officer of the United States information relating to the commission or possible commission of federal offenses—specifically, tampering with Gregory Nicholson, a federal witness, and unlawful contact with Gregory Nicholson in contempt of court by violation of conditions of pretrial release by Dustin Honken—which killings were first-degree murders, as defined by 18 U.S.C. § 1111, all in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(1)(C), 1512(a)(2)(A), 1111, and 2.

**Count 5** of the indictment is the last of the five charges of "aiding and abetting the murder of a witness." It charges that, on or about November 5, 1993, Angela Johnson aided and abetted another individual to willfully, deliberately, maliciously, and with premeditation and malice aforethought, unlawfully kill Terry DeGeus with the intent to prevent Terry DeGeus from communicating to a law enforcement officer of the United States information relating to the commission or possible commission of federal offenses—specifically, the distribution of methamphetamine and conspiracy to distribute methamphetamine—

which killing was a first-degree murder, as defined by 18 U.S.C. § 1111, all in violation of 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(2)(A), 1111, and 2.

**Count 6** of the indictment was described above, in shorthand terms, as the charge of "aiding and abetting the solicitation of the murder of witnesses." It charges that, between about June 10, 1996, and February 24, 1998, Angela Johnson aided and abetted another individual to solicit, command, induce, and endeavor to persuade Dean Donaldson and Anthony Altimus to engage in conduct constituting a felony that has as an element the use, attempted use, and threatened use of physical force against the person of another in violation of the laws of the United States—specifically, the murders of Timothy Cutkomp and Daniel Cobeen, with the intent to prevent these witnesses' attendance or testimony at a federal drug trial, a second case against Dustin Honken—with the intent that Dean Donaldson and Anthony Altimus engage in such conduct and under circumstances strongly corroborative of that intent, all in violation of 18 U.S.C. §§ 373(a)(1) and 2.

Finally, **Count 7** of the July 26, 2000, indictment charges Johnson with a "conspiracy" offense, described above, in understated terms, as "conspiracy to interfere with witnesses." It actually charges that, between about July 1, 1993, and continuing thereafter until about February 24, 1998, Angela Johnson knowingly and willfully combined, conspired, confederated, and agreed with other persons known and unknown to the grand jury to commit offenses against the United States, which were identified as (1) killing or attempting to kill another person with the intent to prevent that person's attendance or testimony at an official proceeding; (2) preventing communication by that person to a law enforcement officer of information relating to the commission or possible commission of a federal offense or violations of conditions of release pending judicial proceedings; (3) knowingly using intimidation, physical force, threats, or otherwise corruptly to persuade another person with intent to influence, delay, or prevent testimony of that person at an official proceeding; (4) hindering, delaying, or preventing communication to a law enforcement officer of information relating to the commission or possible commission of a federal offense or a violation of conditions of release pending judicial proceedings; and (5) soliciting, commanding, inducing, and endeavoring to persuade a person to commit a violent felony with intent that such person

dictment against Johnson, in Case No. CR 01–3046–MWB, filed on August 30, 2001, charges her with five counts of killing witnesses while engaging in a drug-trafficking conspiracy, and five counts of killing witnesses in furtherance of a continuing criminal enterprise (CCE).[2]

Johnson was arrested on July 30, 2000, by officers with the Iowa Department of Criminal Investigation (DCI) on a warrant issued pursuant to the first indictment against her. She has been incarcerated since that time. Although Johnson was originally held in the Benton County Jail, she has now been incarcerated in the Linn County Jail for more than a year-and-a-half.

### B. The Motion For A Bill Of Particulars

On October 18, 2001, Johnson filed a motion for a bill of particulars regarding the ten counts in the second indictment against her. In that motion, Johnson argued that the government should be required to provide the following information to advise her adequately of the charges against her: the names of all known co-conspirators; the specific time, place, and locations of overt acts comprising the alleged drug-trafficking conspiracy; the time, place, and location of the overt acts allegedly comprising the CCE violation; the names of her alleged supervisees on the CCE charges; and whether she is

charged as an aider and abettor or as a supervisor, manager, or organizer. The government resisted Johnson's motion in its entirety on October 26, 2001, arguing, in essence, that its "open file" discovery policy more than satisfied any supposed deficiencies in the statement of the ten charges in the second indictment against Johnson. The government argued, as well, that Johnson was attempting to use a bill of particulars as a tool for discovery, which is impermissible.

Pursuant to an administrative order in this district, Johnson's motion for a bill of particulars was referred to Magistrate Judge Paul A. Zoss pursuant to 28 U.S.C. § 636(b)(1)(A). Judge Zoss held a hearing on the motion on November 7, 2001, and issued his ruling the next day. Judge Zoss wrote,

> Primarily, the court finds the Government has gone "above and beyond" its duty merely to disclose discovery materials to Johnson, and has made every effort to provide her counsel with the materials necessary to prepare Johnson's case. That being said, however, the court finds the very gravity of the charges against Johnson warrants more than the bare bones indictment provides, and more specificity than Johnson and her counsel can glean from poring through many thousands of pages of discovery materials. Therefore, the court

---

engage in such conduct under circumstances strongly corroborative of that intent.

**2.** More specifically, **Counts 1** through **5** of the second indictment charge that, on or about July 25, 1993, while engaging in an offense punishable under 21 U.S.C. § 841(b)(1)(A) and 846, relating to a conspiracy to manufacture and distribute more than 100 grams of methamphetamine between 1992 and 2000, Angela Johnson intentionally killed and counseled, commanded, induced, procured, and caused and aided and abetted the intentional killing of Gregory Nicholson, Lori Duncan, Amber Duncan, Kandi Duncan, and Terry De-

Geus, respectively, and that such killings resulted, all in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. **Counts 6** through **10** charge that, on or about July 25, 1993, Angela Johnson, while working in furtherance of a continuing criminal enterprise between 1992 and 2000 in violation of 21 U.S.C. § 848(c) intentionally killed and counseled, commanded, induced, procured, and caused and aided and abetted the intentional killing of Gregory Nicholson, Lori Duncan, Amber Duncan, Kandi Duncan, and Terry De-Geus, respectively, and that such killings resulted, all in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2.

**grants in part and denies in part** Johnson's motion for a bill of particulars. Order On Motion For Bill Of Particulars (November 8, 2001), 7 (emphasis in the original). More specifically, Judge Zoss concluded that Johnson was not entitled to the information that she requested regarding "overt acts," on either the conspiracy or CCE charges, and that the government need not specify whether Johnson is being charged as an aider and abettor or as a principal, because the distinction is irrelevant here. He therefore denied Johnson's motion for a bill of particulars as to these kinds of information. However, Judge Zoss granted Johnson's motion for a bill of particulars to the extent that he ordered the government to specify, as to the drug conspiracy counts, the names of all known but unindicted co-conspirators, and, as to the CCE counts, all known supervisees, supervisors, managers, or organizers.

Neither party was happy with this resolution of Johnson's motion for a bill of particulars. The government appealed Judge Zoss's order on November 15, 2001, and Johnson filed her appeal on November 16, 2001. The government ultimately filed a brief in support of its appeal and in response to Johnson's appeal on December 19, 2001.

### C. The Motion For Transfer To A Different Facility

The other ruling now on appeal to this court is Judge Zoss's denial of Johnson's April 24, 2002, "Motion, Pursuant to 18 U.S.C. § 3142(i), for Transfer to a Different Facility." Johnson has moved for a transfer to a different facility three times since her indictment in these cases, but Judge Zoss has denied all three of those motions. Only Judge Zoss's denial of the latest motion is on appeal here, however.

Judge Zoss denied that latest motion for a transfer by order dated May 7, 2002. Judge Zoss concluded, first, that the conditions at the Linn County Jail do not

amount to "punishment," or otherwise violate Johnson's constitutional rights, as Johnson had contended. Further, he concluded that the conditions at the Linn County Jail do not provide a compelling reason to transfer Johnson to another facility, because, even in light of Johnson's extended pretrial detention, the jail conditions are necessarily incident to administrative interests in safety, security, and efficiency, and are not punitive in intent. Judge Zoss also concluded that the fact that Johnson's three attorneys—located in Cedar Rapids, Iowa, Des Moines, Iowa, and Kansas City, Missouri, respectively—would save a combined total of 258.2 miles, if all three were to travel to meet Johnson at the same time in Des Moines, where Johnson hopes to be transferred, rather than Cedar Rapids, fell far short of a denial of Johnson's constitutional rights to an attorney and to prepare her case adequately. Judge Zoss noted that the travel distance remained identical for Johnson's two lead attorneys, the ones in Cedar Rapids and Des Moines, if Johnson were transferred from the Linn County Jail in Cedar Rapids to a facility in Des Moines, because the only change would be which attorney had to travel. Judge Zoss concluded that the fact that the third attorney, from Kansas City, Missouri, would not have to travel as far if Johnson were transferred to Des Moines did not even approach a violation of Johnson's right to counsel. Judge Zoss concluded that, these issues aside, he did not agree with Johnson's contention that 18 U.S.C. § 3142(i) allowed the court to transfer Johnson to a different facility.

Johnson appealed Judge Zoss's order denying her motion to transfer on May 13, 2002. The government resisted Johnson's appeal of that ruling on May 21, 2002.

### II. LEGAL ANALYSIS

### A. Standard of Review

Section 636(b)(1)(A) of Title 28 provides both the authority for a magistrate judge

to consider the motions on which Judge Zoss ruled in these cases and the standard of review this court must apply to Judge Zoss's rulings on the parties' appeals. Section 636(b)(1)(A) provides that "a judge may designate a magistrate to hear and determine any pretrial matter pending before the court," with certain exceptions not applicable here, and provides, further, that "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also In re Lane*, 801 F.2d 1040, 1042 (8th Cir.1986) (noting that 28 U.S.C. § 636(b)(1)(A) "authorizes district courts to designate magistrates to hear and determine pretrial matters" and "[t]he Act also provides that any decision of the magistrate on pretrial matters is reviewable by the district court, which may set aside any part of the magistrate's order it finds to be clearly erroneous or contrary to law") (citations omitted). The court will consider in turn whether the challenged portions of Judge Zoss's rulings on Johnson's motion for a bill of particulars and motion for transfer to a different facility are either "clearly erroneous" or "contrary to law."

### B. Appeal Of The Ruling On Johnson's Motion For A Bill Of Particulars

#### 1. Arguments of the parties

In her November 16, 2001, appeal of Judge Zoss's ruling granting in part and denying in part her motion for a bill of particulars, Johnson explained that "[t]he sole issue appealed is the denial of the relief requested in paragraph 5(c) of the Motion for Bill of Particulars which requested particulars with respect to each of the violations alleged to be part of the continuing series of violations that comprise an essential element of the CCE counts." Defendant's Appeal From Magis-

trate's Ruling Partially Denying Defendant's Motion For Bill Of Particulars, 1. In support of her appeal, Johnson argues that the indictment fails to apprise her of what violations will be relied upon to support the CCE charges. She relies on cases that she reads to hold that express disclosure of the underlying series of acts for a CCE charge will be required by way of a bill of particulars, unless the defendant could infer those acts from other counts of the indictment. In her case, however, she contends that the other counts of the indictment, that is, the conspiracy counts in the second indictment, fail to define the series of acts that constituted a CCE. Therefore, she contends that a bill of particulars defining those acts is necessary in this case.

The government filed its brief in support of its November 15, 2001, appeal and in resistance to Johnson's appeal on December 19, 2001. In contrast to the clarity with which Johnson has identified the sole ground for her appeal, the government's brief is rather confusing as to what portions of Judge Zoss's ruling the government is appealing. That confusion stems, in the first instance, from the heading on the portion of the government's brief that supports the government's own appeal. That heading is, "THE MAGISTRATE JUDGE ERRED IN CREATING A 'GRAVITY OF THE CHARGES' STANDARD AND IN PARTIALLY GRANTING THE DEFENDANT'S MOTION FOR BILL OF PARTICULARS RELATING TO COUNTS 1 THROUGH 5 OF THE INDICTMENT FOR VIOLATION OF 21 U.S.C. § 848(C)." *See* Government's Memorandum (Docket # 215), 2. However, the counts of the second indictment involving a "violation of 21 U.S.C. § 848(c)," which defines a CCE, are not Counts 1 through 5, but Counts 6 through 10. *See supra* note 2. Counts 1 through 5 of the second indictment, on the other hand, involve charges of killing witnesses

while engaging in a drug-trafficking conspiracy punishable under 21 U.S.C. § 841(b)(1)(A) and 846, all in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2.

The government makes several specific arguments in support of its appeal, which the court has examined to see if they help clarify the scope of the government's appeal. However, the court finds that, while some of the individual arguments are clearly stated, they do not clarify the scope of the government's appeal. One point of clarity is the government's first argument in support of its appeal, which is that there is no precedent for the adoption of a "gravity of the charges" standard, as purportedly applied by Judge Zoss, for granting a bill of particulars. Instead, the government cites what it believes to be the correct standard and argues that Johnson has full access to the information she seeks, in another satisfactory form, pursuant to the "open file" discovery provided in this case.

Apparently to rebut the defendant's contention that the language of the indictment is insufficient to apprise her fully of the charges against her, the government then quotes the language of Counts 1 through 5 of the second indictment, but not the language of Counts 6 through 10. Thus, the focus of the government's appeal, at this point in its brief, appears to be the disclosures that Judge Zoss required as to the conspiracy counts, but not those he *also* ordered as to the CCE counts. In response to Johnson's argument that the indictment does not allege sufficient particulars *of the drug conspiracy*, the government points out that Judge Zoss found that the government had made available to Johnson its entire investigative file, comprising over 15,000 pages, organized by both topic and time period, in an effort to make the file more "user friendly," and also relies on Judge Zoss's finding that the government has gone "above and beyond" its duty to disclose information in this case. Apparently still focusing on just the conspiracy charges, the government argues that "the naming of co-conspirators in the Indictment who are not charged, even in another Indictment, is impermissible," *id.* at 6, and contends, further, that the dates alleged in the indictment in this case and the nature of the crimes (killing of witnesses) are sufficient to provide notice to the defendant. *Id.* at 7. Moreover, the government argues that the likelihood of surprise or prejudice at trial in this case is minimal, in light of the disclosures in the discovery file. This portion of the government's brief closes with reiteration of the argument that a "gravity of the charges" standard is improper, while the defendant's contentions do not meet the correct standard for a bill of particulars.

Because the government makes no specific argument about, and cites no authority specifically relating to, sufficiency of the pleading of the CCE counts, while specifically asserting that the conspiracy counts are adequately pleaded, it appears that the government's brief could be read thus far to assert only error in the granting of a bill of particulars as to the identity of co-conspirators on the conspiracy counts, Counts 1 through 5. However, the final paragraph of the government's argument in support of its own appeal muddies the waters, because it appears to be an argument that granting the motion for a bill of particulars *to any extent,* not just as to Counts 1 through 5, was error:

> The open discovery in this case ensures that the defendant is not disabled or prejudiced. The defendant is not entitled to a bill of particulars. The Magistrate Judge erred in granting, in part, the Motion for Bill of Particulars due to the application of a "gravity of the charges" standard. The Magistrate Judge abused its discretion in granting, in part, defendant's Motion for Bill of Particulars pursuant to Rule 7 of the

Federal Rules of Criminal Procedure. Fed.R.Crim.P. 7(f).

Government's Memorandum at 8.

The waters are made no clearer by examining the government's argument in resistance to Johnson's appeal of partial denial of her motion for a bill of particulars. *See* Government's Memorandum at 9–11. This is so, first, because in that section of its brief, the government asserts that "[t]he Magistrate Judge correctly denied the defendant the balance of a bill of particulars in regard to Counts 6 through 10 of the Indictment," and similar arguments to that effect. *See id.* at 9; *see also id.* at 11. Moreover, only in this portion of the government's brief does the government quote the language of Counts 6 through 10, the CCE counts, and assert the adequacy of the indictment as to those charges. These arguments might lead one to believe that the government is under the misapprehension that Judge Zoss denied the motion for a bill of particulars in all respects as to Counts 6 through 10, and only granted the motion in some respects as to Counts 1 through 5. In the alternative, the government's brief could lead one to the conclusion that the government is *not* appealing the disclosures as to Counts 6 through 10 required by Judge Zoss's order. However, the government ultimately prays that "the district court reverse the Magistrate Judge's partial granting of the defendant's Motion for Bill of Particulars," presumably in all respects as to all charges, "and reaffirm the Magistrate Judge's denial of the balance of the Motion for Bill of Particulars." *Id.* at 11–12.

In short, it is clear that the government is not happy with Judge Zoss's ruling, and that the government specifically asserts that Judge Zoss erred by using a "gravity of the charges" standard. However, it is not clear whether the government is asserting error only as to the requirement of a bill of particulars identifying co-conspirators in Counts 1 through 5, or is also asserting error as to the requirement of a bill of particulars identifying all known supervisees, supervisors, managers, or organizers as to Counts 6 through 10.

### 2. Applicable standards

#### a. Rule 7(f)

Rule 7(f) of the Federal Rules of Criminal Procedure provides for a bill of particulars as follows:

**(f) Bill of Particulars.** The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

FED. R. CRIM. P. 7(f). Although the Rule provides time limitations on when a motion for a bill of particulars can be made,[3] and when and according to what standards a bill of particulars may be amended—*i.e.,* "at any time subject to such conditions as justice requires"—the Rule does not state any standards for determining whether a bill of particulars should be required in the first place. *See id.*

#### b. Purpose of a bill of particulars

■ The Eighth Circuit Court of Appeals, however, has filled in this blank. For example, in *United States v. Wessels*, 12 F.3d 746 (8th Cir.1993), *cert. denied*, 513 U.S. 831, 115 S.Ct. 105, 130 L.Ed.2d 53

---

**3.** Johnson's motion for a bill of particulars on the second indictment was timely filed, where the second indictment was filed on August 30, 2001, Johnson was arraigned on that indict-ment on October 15, 2001, and her motion for a bill of particulars was filed on October 18, 2001, well within ten days of her arraignment. *See* FED. R. CRIM. P. 7(f).

(1994), the court identified the proper purposes of a bill of particulars, as follows:

> [T]he purpose of a bill of particulars is to inform the defendant of the nature of the charges against him and to prevent or minimize the element of surprise at trial. *United States v. Garrett*, 797 F.2d 656, 665 (8th Cir.1986). A bill of particulars, however, is not a proper tool for discovery, *United States v. Hester*, 917 F.2d 1083, 1084 (8th Cir.1990); it is not to be used to provide detailed disclosure of the government's evidence at trial. *United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399, 405 (4th Cir.1985).

*Wessels*, 12 F.3d at 750; *accord United States v. Hester*, 917 F.2d 1083, 1084 (8th Cir.1990) (cautioning that "a bill of particulars is not a proper tool for discovery," and so the district court did not abuse its discretion in denying a defendant's "discovery-oriented bill of particulars") (citing *United States v. Hill*, 589 F.2d 1344, 1352 (8th Cir.), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979)). The proper purposes of a bill of particulars are plainly at issue here, where the government contends that Judge Zoss should have denied Johnson's motion for a bill of particulars in its entirety, because Johnson is attempting to use a bill of particulars as a tool of discovery.

### c. When is a bill of particulars appropriate?

Turning to the question of what circumstances justify granting a motion for a bill of particulars, the Eighth Circuit Court of Appeals has also explained that "[t]o establish reversible error from the denial of a motion for a bill of particulars, a defendant must show that he was actually surprised at trial and suffered prejudice from the denial." *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir.1993) (citing *United States v. Stephenson*, 924 F.2d 753, 762 (8th Cir.), *cert. denied*, 502 U.S. 813, 112

S.Ct. 63, 116 L.Ed.2d 39 (1991)). However, this "actually surprised and prejudiced" standard plainly applies only to *an appeal after trial* of the *denial* of a defendant's motion for a bill of particulars, not to appeals to a district court judge of a magistrate judge's order *granting in part and denying in part* a motion for a bill of particulars *prior to trial*, as is the case here.

■ Instead, this court finds that, at least in the circumstances presented here, the following rule is more to the point: "The district court has broad discretion in granting or denying a bill of particulars." *United States v. Sileven*, 985 F.2d 962, 966 (8th Cir.1993); *accord Stephenson*, 924 F.2d at 762; *United States v. Key*, 717 F.2d 1206, 1210 (8th Cir.1983). Also applicable here is the conclusion of the Eighth Circuit Court of Appeals that a district court "properly denied the bill" where "[t]he indictment sufficiently informed [the defendant] of the nature of the charges against him." *Id.* It is this general standard of "sufficiency of the indictment" that properly determines whether a bill of particulars should or should not have been granted prior to trial, and therefore, also applies to this court's pretrial review of the magistrate judge's order on Johnson's motion for a bill of particulars.

■ However, the standards for determining the "sufficiency of the indictment" also require some fuller explication. On that issue, the Eighth Circuit Court of Appeals also provided some guidance in *Wessels*,

> An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, *fairly informs the defendant of the charges against which he must defend,* and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to the subsequent prose-

cution. *United States v. Young*, 618 F.2d 1281, 1286 (8th Cir.), *cert. denied*, 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980). An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted. *Id.* *Wessels*, 12 F.3d at 750 (emphasis added); *accord United States v. Key*, 717 F.2d 1206, 1210 (8th Cir.1983) (where "the indictment specified sufficient facts to avoid surprise to the appellant and was sufficient to bar future prosecutions, ... the district court did not abuse its discretion in refusing the motion [for a bill of particulars]"). The Eighth Circuit Court of Appeals has also explained that "[t]he district court, in its discretion, may order the government to provide requested additional detail where the particulars set out in the indictment fail sufficiently to apprise the defendant of the charges *to enable him to prepare a defense.*" *Garrett*, 797 F.2d 656, 665 (8th Cir.1986) (emphasis added); *cf. Fleming*, 8 F.3d at 1265 ("To establish reversible error from the denial of a motion for a bill of particulars, a defendant must show that he was actually surprised at trial and suffered prejudice from the denial."); *Stephenson*, 924 F.2d at 762 (same). Thus, the "sufficiency of the indictment," *when the issue is whether or not to require a bill of particulars*, turns on whether or not the indictment fairly informs the defendant of the charges *such that the defendant can prepare a defense*, thus avoiding surprise at trial, can assert double jeopardy, or both.

In order to meet these requirements, " '[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself ...' *as long as* the elements of the offense are delineated *and the general statement is accompanied by the specific facts constituting the offense.*" *United States v. Helmel*, 769 F.2d 1306, 1322 (8th Cir.1985) (quoting *Hamling v.*

*United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)) (emphasis added). As the Supreme Court has also explained,

> [F]ederal trial courts have always had very broad discretion in ruling upon requests for [a bill of particulars], compare *Wong Tai v. United States*, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545 (1927). Furthermore, it is not uncommon for the Government to be required to disclose the names of some potential witnesses in a bill of particulars, *where this information is necessary or useful in the defendant's preparation for trial.* See, *e.g., United States v. White*, 370 F.2d 559 (7th Cir.1966). See also *United States v. Debrow*, 346 U.S. 374, 378, 74 S.Ct. 113, 98 L.Ed. 92 (1953).

*Will v. United States*, 389 U.S. 90, 98–99, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) (emphasis added). In *Will*, the Court noted that the district court had not improperly required the government to disclose a witness list prior to trial, in response to the defendant's motion for a bill of particulars, but had instead properly relied on the rationale that requiring disclosure of the names of some ·potential witnesses was " 'not that they will or may be witnesses, but that the defendant requires identification of the times, places and persons present *in order to prepare his defense.*' " *Id.* at 101, 88 S.Ct. 269 (quoting the trial court's opinion granting a motion for a·bill of particulars) (emphasis added).

■ Furthermore, in *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), the Court explained as follows the circumstances in which an indictment simply setting forth the offense in the words of the statute may not suffice:

> Our prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge

against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.' *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1881). 'Undoubtedly the language of the statute may be used in the general description of an offence, but *it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.' United States v. Hess,* 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516 (1888). *Hamling,* 418 U.S. at 117–18, 94 S.Ct. 2887 (emphasis added). Thus, the specificity required in order to prepare a defense depends upon whether the indictment states sufficient facts to inform the accused of "the specific offense," as opposed to the general category of offenses defined by the statute.

■ In *Hamling,* the Court clarified this point further by explaining that an indictment may not be sufficient if it simply repeats the language of the criminal statute " '[w]here guilt depends so crucially upon ... *a specific identification of*

*fact,'* " but may be sufficient, even if it only repeats the language of the statute, where the critical inquiry is one of law. *See id.* at 118, 94 S.Ct. 2887 (quoting *Russell v. United States,* 369 U.S. 749, 764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)) (emphasis added by the *Hamling* Court). The Court in *Hamling* explained this distinction by comparing the charges in the case before it with those in *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The Court observed that *Russell* involved a prosecution under 2 U.S.C. § 192, which makes willful refusal to answer any question pertinent to the question under inquiry by Congress a misdemeanor offense.[4] *See Hamling,* 418 U.S. at 118, 94 S.Ct. 2887 (citing *Russell,* 369 U.S. at 764, 82 S.Ct. 1038). The Court noted that, in *Russell,* " 'guilt depended upon a specific identification of fact,' " because " 'the very core of criminality' " under the statute was whether the questions that the defendant refused to answer were pertinent to the subject under inquiry by Congress. *Id.* (quoting *Russell,* 369 U.S. at 764, 82 S.Ct. 1038). Under those circumstances, the Court pointed out that, in *Russell,* it had explained that " '[w]hat the subject actually was ... is central to every prosecution under the statute.' " *Id.* (again quoting *Russell* ). On the other hand, in *Hamling,* the Court found that the case then before it depended upon a question of law, specifically, the definition of obscenity, in which case, the indictment was sufficient where it simply repeated the language of the criminal statute. *Id.* at 118–19, 94 S.Ct. 2887.

4. Section 192 provides as follows:
Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question *pertinent to the question under inquiry,* shall be deemed guilty of a misdemeanor....
2 U.S.C. § 192.

#### d. Other circumstances making a bill of particulars unnecessary

■ In addition to sufficiency of the indictment to apprise the defendant of the charged offenses so as to permit the defendant to defend against those charges, there are other circumstances that may make a bill of particulars unnecessary. Specifically, numerous courts have held that no bill of particulars is required when the defendant has access to the necessary detail about the charges to prepare a defense, for example, in the form of "open file" discovery or "some other satisfactory form." *See, e.g., United States v. Diaz,* 190 F.3d 1247, 1258 (11th Cir.1999) (noting that "[s]ome cases have held that the indictment need not describe each item subject to forfeiture if this is done in a bill of particulars, or its equivalent") (citations omitted), *cert. denied,* —— U.S. ——, 122 S.Ct. 180, 151 L.Ed.2d 125 (2001); *United States v. Sepulveda,* 15 F.3d 1161, 1193 (1st Cir.1993) (in the "unremarkable circumstances" of a drug conspiracy prosecution, "the district court acted well within the encincture of its discretion in denying appellants' motions" for bills of particulars, where "both appellants enjoyed the benefits of modified open-file discovery, i.e., automatic discovery that encompassed all relevant data except Jencks Act material related to witnesses not employed in law enforcement"), *cert. denied,* 512 U.S. 1223, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1994); *United States v. Higgins,* 2 F.3d 1094, 1096–97 (10th Cir.1993) (the defendant was adequately informed of the charges against him, even though he did not receive a document identified as a "bill of particulars," where he had access to "open file" discovery, and the government provided in its brief in resistance to a motion for a bill of particulars citations to the file of the documents answering each of the defendant's eight specific questions for clarification); *United States v. Canino,* 949 F.2d 928, 949 (7th Cir.1991) (stating that "a bill of particulars is not required when information necessary for a defendant's defense can be obtained through 'some other satisfactory form,'" quoting WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIM. 2D, § 129, pp. 436–38 (1982), and concluding that "[t]he nature and operations of the 'open-file' policy is an adequate 'satisfactory form' of information retrieval, making the bill of particulars unnecessary," because "the defendant was sufficiently aware of the charges against him, and of what he was going to have to defend himself against at trial"), *cert. denied,* 504 U.S. 910, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992); *United States v. Vasquez,* 867 F.2d 872, 874 (5th Cir.1989) ("It is well established that if the government has provided the information called for in some other satisfactory form, then no bill of particulars is required," and there was no abuse of discretion in denial of a motion for a bill of particulars where the defendant received "open file" discovery); *United States v. Amend,* 791 F.2d 1120, 1125–26 (4th Cir.) ("[T]he government's 'open file' policy provided Amend with access to all information in the government's possession and with adequate notice of its intention to seek forfeiture. This process gave her adequate notice of the extent to which forfeiture was sought in the same manner as a bill of particulars would have provided, and she suffered no prejudice as a result of the denial of the bill of particulars. Under the narrow circumstances of this case then, any error in denying her motion for a bill of particulars was harmless."), *cert. denied,* 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 353 (1986); *United States v. Duncan,* 598 F.2d 839, 849 (4th Cir.) ("The appraisal function of an indictment may be satisfied" by "open file" discovery), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); *cf. Stephenson,* 924 F.2d at 761–62 (the district court did not abuse its discretion in denying a motion

for a bill of particulars where "open file" discovery provided all the information that the defendant needed to understand the charges against him). The government specifically relies upon this principle as a ground for overruling Judge Zoss and denying any portion of Johnson's motion for a bill of particulars in this case.

### 3. Did Judge Zoss apply the wrong legal standard?

The government contends that Judge Zoss applied the wrong legal standard for granting Johnson's motion for a bill of particulars, to any extent, by considering "the gravity of the charges" as a basis for ordering disclosures beyond the language of the indictment and the "open file" discovery available in this case. Judge Zoss did rely, in part, on "the gravity of the charges" as a basis for holding that, notwithstanding disclosure "above and beyond" its duty, the government should produce further information about the conspiracy and CCE charges in this case. Order On Motion For Bill Of Particulars (November 8, 2001) at 7. The court finds nothing in precedent of the Eighth Circuit Court of Appeals expressly authorizing or condoning a "gravity of the charges" standard for determining whether or not a bill of particulars is required. Rather, the standard is, as stated above, whether the indictment sufficiently informs the defendant of the nature of the charges against her so that she can prepare a defense. See Sileven, 985 F.2d at 966; Garrett, 797 F.2d at 665; Key, 717 F.2d at 1210 (adding that the indictment must be sufficient to bar future prosecution).

However, Judge Zoss's consideration of the "gravity of the charges," and his further consideration of the complexity of the factual basis for those charges in this case, may not be entirely inconsistent with either the "discretion" afforded a court in deciding whether or not to grant a motion for a bill of particulars, see, e.g., Sileven,

985 F.2d at 966; Stephenson, 924 F.2d at 762; Key, 717 F.2d at 1210, or the determination of whether an indictment is, indeed, sufficient to inform the defendant of the charges against her to permit her to prepare a defense, see, e.g., Sileven, 985 F.2d at 966; Garrett, 797 F.2d at 665; Key, 717 F.2d at 1210, for example, by distinguishing "the specific offense" charged from the general category of offenses defined by the statute. See Hamling, 418 U.S. at 117–18, 94 S.Ct. 2887. Moreover, upon review, this court concludes that Judge Zoss could, and did, properly consider whether a bill of particulars should issue in the circumstances of this case based on whether the indictment sufficiently informed the defendant of the charges to prepare her defense, where Judge Zoss's determination, in part, turned on whether the factual circumstances of the case were so complex as to require more specification of facts supporting certain elements of the charged crimes than the indictment provided on its face. Cf. id.

Thus, the court concludes that whether or not Judge Zoss's ruling on Johnson's motion for a bill of particulars should be affirmed turns not so much on whether he applied the appropriate legal standard, but whether he made a "clearly erroneous" determination that disclosure of certain information was (or was not) necessary for Johnson to prepare her defense. See 28 U.S.C. § 636(b)(1)(A) (a district court may "reconsider" a magistrate judge's ruling where it was either "contrary to law" or "clearly erroneous"); accord In re Lane, 801 F.2d at 1042.

### 4. Was Judge Zoss's order clearly erroneous?

### a. Order to identify co-conspirators, supervisees, and supervisors

■ The government contends that, as to Counts 1 through 5 of the second indict-

ment, it was "clearly erroneous," indeed, it was "impermissible"—*i.e.,* "contrary to law"—for Judge Zoss to require disclosure of co-conspirators by way of a bill of particulars. Although, as explained above, it is not entirely clear whether the government makes the same objection as to that part of Judge Zoss's order requiring disclosure of all known supervisees, supervisors, managers, or organizers as to Counts 6 through 10, the court will assume that the government also finds that portion of Judge Zoss's order objectionable.

The government contends that, "[r]egarding specifically naming the others involved, the naming of co-conspirators in the Indictment who are not charged, even in another Indictment, is impermissible," citing *United States v. Galvan,* 961 F.2d 738, 742 (8th Cir.1992). Government's Memorandum (Docket # 215) at 6. In *Galvan,* the defendant asserted that the district court erred by not giving his proposed instruction that the jury could not convict him of conspiracy with a person named Beninger, because the grand jury knew about her, but did not name her as an unindicted co-conspirator. *Galvan,* 961 F.2d at 741–42. The court rejected that argument, as follows:

> Galvan's position is without legal merit. The case he relies on for support, *United States v. Briggs,* 514 F.2d 794 (5th Cir.1975), is directly opposed to his position. In that case, the court held that the grand jury could never name an unindicted co-conspirator in an indictment. Any unindicted co-conspirators must remain unnamed. *Id.*

*Galvan,* 961 F.2d at 742. Obviously, *Galvan* is inapposite here: The defendant advanced a proposition not at issue here and the court rejected that proposition, because it was not supported by the authority the defendant cited. Likewise, *Galvan* did not consider, nor did it decide, whether unindicted co-conspirators can be named

*in a bill of particulars.* Thus, the defect in the government's argument is the same as that in the argument of the defendant in *Galvan:* The cited authority does not support the proposition for which it is offered. The court finds no prohibition in *Galvan* or in controlling authority of the United States Supreme Court or the Eighth Circuit Court of Appeals on identification of co-conspirators in a bill of particulars.

Moreover, although some courts have refused to grant bills of particulars naming unindicted co-conspirators, courts have also, with some regularity, required the government to identify unindicted co-conspirators in that way. *Compare United States v. Rey,* 923 F.2d 1217, 1222 (6th Cir.1991) (affirming denial of a motion for a bill of particulars requesting the names of co-conspirators, because "[a]s long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators"); *United States v. DiCesare,* 765 F.2d 890, 897–98 (9th Cir.) (a bill of particulars was not warranted when the defendant sought to obtain co-conspirator names, exact dates, and overt acts), *amended on other grounds,* 777 F.2d 543 (1985); *with United States v. Mills,* 204 F.3d 669, 670 (6th Cir.2000) ("The original indictment did not give the names of the unindicted co-conspirators known to the grand jury, but these names ... were later set forth in a bill of particulars."), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000); *United States v. Sims,* 156 F.3d 1233, 1998 WL 415997, *2 (6th Cir.1998) (table op.) ("In response to defendant's request for a bill of particulars, the district court ordered the government to provide defendant with the names of the known, unindicted co-conspirators alluded to in the indictment."); *United States v. Newton,* 2002 WL 122911, *2

(S.D.N.Y. Jan. 30, 2002) ("It is beyond dispute that this Court has the authority, in its discretion, to order the government to disclose the identities of known unindicted co-conspirators. *See, e.g., United States v. Nachamie*, 91 F.Supp.2d 565, 572 [ (S.D.N.Y.2000) ] (recognizing that the "Second Circuit has affirmed both the grant and the denial of" requests for disclosure of the names of unindicted co-conspirators); *United States v. Gotti*, 784 F.Supp. 1017, 1019 (E.D.N.Y.1992) ("The better authority, then, mandates that the question of granting the request of these defendants for a bill of particulars [seeking the names of any unindicted co-conspirators] is entirely a matter of the sound discretion of the court."); *United States v. Ferrarini*, 9 F.Supp.2d 284, 299 (S.D.N.Y. 1998) (requiring government to provide list of co-conspirators).").[5] While this split in authority provides no particular guidance, some courts have identified factors that may go into a practical determination of whether or not to require the government to identify unindicted co-conspirators in a bill of particulars in a specific case, including the nature and duration of the conspiracy. *See, e.g., United States v. Reddy*, 190 F.Supp.2d 558, 570 (S.D.N.Y.2002) ("Courts have granted requests for bills of particulars identifying co-conspirators in cases where the number of defendants was large, where the alleged conspiracy spanned long periods of time, and where the alleged schemes were wide-ranging.") (citing cases); *and compare United States v. Ballesteros Gutierrez*, 181 F.Supp.2d 350, 356 (S.D.N.Y.2002) ("Given the limited nature and duration of the alleged conspiracy, [the defendant] is not entitled to identification of coconspirators."). Therefore, it was not "impermissible" for Judge Zoss

to order the disclosure of unindicted co-conspirators.

This court finds the decision in *United States v. Maull*, 806 F.2d 1340 (8th Cir. 1986), *cert. denied*, 480 U.S. 907, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987), instructive on the need for a bill of particulars in light of the charges in this case. In *Maull*, although the defendant was not charged with killing witnesses during a drug-trafficking conspiracy or in furtherance of a CCE, the defendant was charged with, among other things, conspiracy to distribute and to possess with intent to distribute controlled substances, in that case, cocaine, in violation of 21 U.S.C. § 846, and engaging in a CCE, in violation of 21 U.S.C. § 848, *see Maull*, 806 F.2d at 1342, that is, the same offenses underlying the charges of murdering witnesses in the second indictment against Johnson. The court in *Maull* identified the elements of the CCE offense as follows: " '1) a felony violation of the federal narcotics laws; 2) as a part of a continuing series of violations; 3) in concert with five or more persons; 4) for whom the defendant is an organizer and supervisor; and 5) from which he derives substantial income or resources.' " *Maull*, 806 F.2d at 1342 (quoting *United States v. Lewis*, 759 F.2d 1316, 1331 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985)). The Eighth Circuit Court of Appeals more recently explained that, "[t]o sustain convictions for murder in violation of 21 U.S.C. § 848(e)(1)(A), an offense for which the death penalty is authorized, the government must prove that Moore and Wyrick were 'engaged in or working in furtherance of' Moore's CCE; that Wyrick intentionally killed Kerns and Moore procured the killing; and 'that

---

**5.** However, it may be inappropriate for the court to allow the release to the press of the names of unindicted co-conspirators, even if those names appear in a bill of particulars.

*See, e.g., United States v. Ladd*, 218 F.3d 701, 704–05 (7th Cir.2000) (discussing such prohibitions on disclosure to the press in *United States v. Smith*, 776 F.2d 1104 (3d Cir.1985)).

there was a substantive connection between the killing and the CCE.' " *United States v. Moore,* 149 F.3d 773, 778 (8th Cir.1998) (quoting the statute), *cert. denied,* 525 U.S. 1030, 119 S.Ct. 570, 142 L.Ed.2d 475 (1998). Thus, it is readily apparent that, at a minimum, the elements for proof of *the existence* of a CCE, as stated in *Maull,* and that Johnson was "working in furtherance of" that CCE are necessarily elements of the "murder in furtherance of a CCE" charges against Johnson in Counts 6 through 10 of the second indictment.

■ In *Maull,* on the question of denial of the defendant's motion for a bill of particulars on the CCE charge, the court first recognized the trial court's discretion to grant or deny such a motion, then stated that, "[s]o long as the defendant was adequately informed of the charges against him, and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial court has not abused its discretion." *Id.* at 1345–46. As to the need for a bill of particulars on the CCE charge against the defendant, in the circumstances of that case, the court concluded as follows:

> We are satisfied that there was no abuse of [the trial court's] discretion in this instance. In response to Maull's motion for a bill of particulars, the Government provided the names of approximately sixty unindicted co-conspirators. This list contained the names of all but one of the individuals Maull organized. In addition, two weeks before trial, the prosecution turned over all Jencks material to the defense, including all statements of those individuals Maull organized. Lastly, before trial Maull was shown a chart that the prosecution used in its opening argument diagraming the structure of Maull's operations. This chart included all but three of the individuals the Government alleged that

Maull organized. Considering the cumulative information Maull received before the trial, then, he cannot be heard to say that he was not adequately apprised of the persons that the Government alleged he had organized, supervised, or managed.

*Maull,* 806 F.2d at 1346. Thus, one of the lessons to be gleaned from the decision in *Maull* is that, where an alleged conspiracy and a CCE involve the same participants, disclosure of the identity of the unindicted co-conspirators may also adequately apprise the defendant of the nature of the CCE. This conclusion follows from the fact that a drug conspiracy is, as a matter of law, a lesser-included offense of a CCE offense based on drug-trafficking. *See United States v. Jefferson,* 215 F.3d 820, 823 (8th Cir.), *cert. denied,* 531 U.S. 911, 121 S.Ct. 261, 148 L.Ed.2d 189 (2000). Moreover, *Maull* strongly suggests that identification of the supervisees and supervisors of the defendant and the organizational structure of the alleged CCE provides sufficient notice of a CCE charge to allow the defendant to prepare a defense.

In the present case, the court cannot find that Judge Zoss's decision to order disclosure of the names of unindicted co-conspirators and participants in the CCE was "contrary to law," where the government has cited no controlling authority so holding, nor was it "clearly erroneous" in the circumstances of this case. 28 U.S.C. § 636(b)(1)(A) (stating the applicable standard of review); *see also In re Lane,* 801 F.2d at 1042 (same). Both the conspiracy and the CCE in which Johnson was allegedly engaged when she participated in the killing of witnesses allegedly existed for many years, between 1992 and 2000, and plainly involved numerous participants as co-conspirators, supervisees, or supervisors. *See Reddy,* 190 F.Supp.2d at 570 (disclosure of co-conspirators is warranted where "the number of defendants was

large, where the alleged conspiracy spanned long periods of time, and where the alleged schemes were wide-ranging.") (citing cases); *cf. Maull*, 806 F.2d at 1346 (identification of supervisees, supervisors, and organizational structure provide sufficient notice of a CCE charge); *and compare Ballesteros Gutierrez*, 181 F.Supp.2d at 356 (no disclosure of co-conspirators was required where the conspiracy was of limited nature and duration). Furthermore, in these circumstances, more than the recitation of the charges in the language of the statutes defining the offenses was required to advise Johnson adequately of the charges against her, because guilt on either the conspiracy or CCE charges " 'depends so crucially upon.... specific identification of ... fact[s],' " including the nature of and the participants in the conspiracy and CCE. *Hamling*, 418 U.S. at 118, 94 S.Ct. 2887 (quoting *Russell*, 369 U.S. at 764, 82 S.Ct. 1038). However, apart from the identity of the persons allegedly murdered and the dates of the alleged killings, the indictment does not contain any adequate statement of "the specific facts constituting the offense[s]," that is, the facts constituting the *underlying* conspiracy or CCE. *Id.* at 117, 94 S.Ct. 2887; *Helmel*, 769 F.2d at 1322 (quoting *Hamling*). Although the objective of the underlying conspiracy is alleged, in generic terms, as "manufactur[ing] and distribut[ing] more than 100 grams of methamphetamine," such a statement of facts hardly provides sufficient notice to allow the defendant to prepare a defense, in light of the eight-year duration for and potential number of conspirators in the conspiracy, particularly where the conspiracy allegedly existed long after the alleged murders. *See Reddy*, 190 F.Supp.2d at 570 (disclosure of co-conspirators is warranted where "the number of defendants was large, where the alleged conspiracy spanned long periods of time and where the alleged schemes were wide-ranging.")

(citing cases); *and compare Ballesteros Gutierrez*, 181 F.Supp.2d at 356 (no disclosure of coconspirators was required where the conspiracy was of limited nature and duration). Moreover, there is not even an identification of the purported objective of the underlying CCE in Counts 6 through 10 of the second indictment, so that the indictment states almost no facts, other than the alleged murder of witnesses, as "the specific facts constituting the offense[s]," specifically, the underlying CCE. *Id.* at 117, 94 S.Ct. 2887; *Helmel*, 769 F.2d at 1322 (quoting *Hamling*). Under these circumstances, Judge Zoss's conclusion that the government must identify co-conspirators and certain participants in the CCE was not clearly erroneous, because such "information is necessary or useful in the defendant's preparation for trial." *Will*, 389 U.S. at 98–99, 88 S.Ct. 269.

Nor is the court convinced that it was clearly erroneous (or contrary to law) for Judge Zoss to conclude that Johnson's request for the names of co-conspirators, supervisees, supervisors, managers, or organizers was neither an attempt to use a bill of particulars as a discovery tool, *see Wessels*, 12 F.3d at 750; *Hester*, 917 F.2d at 1084, nor unnecessary in light of the availability of the information in "some other satisfactory form," specifically, the availability of "open file" discovery. *See supra*, page 19. Although the government has not simply dumped an undifferentiated mass of information upon the defendant, but has instead attempted to organize the materials in the file by time and topic to make the file "user friendly," these efforts may not be sufficient to permit the defendant to prepare a defense to the charges against her, in part, because of the very volume of that discovery, and in part, because of the complexity of the facts at issue over a considerable period of time. *See, e.g., Garrett*, 797 F.2d at 665; *accord Will*, 389 U.S. at 98–99, 88 S.Ct. 269. In

other words, the sheer volume and complexity of the information in this case may make it particularly hard to distinguish "the specific offense[s]" charged from the general category of offenses defined by the statute. *See Hamling,* 418 U.S. at 117–18, 94 S.Ct. 2887. The availability of "open file" discovery in this case also differs significantly from the availability of such discovery in other cases in which the "open file" provided, in "some other satisfactory form," the information necessary for the defendant to prepare a defense. For example, while the court is aware that the United States Attorney's Offices in a number of districts, as part of their "open file" discovery, routinely make the entire discovery file available to defense counsel on a compact disk, so that defense counsel can search and index the materials as counsel deems appropriate, that is not so in this case. Rather, Johnson's defense attorneys have been required to sit in a room with the discovery file and dictate vast portions of the materials in the file for later transcription, because defense attorneys were not allowed to remove or copy those materials. Indeed, one defense attorney represented in a recent telephone conference that two people are working full time transcribing dictation from defense attorneys' review of more than 15,000 documents in the "open file." Therefore, in this case, there is a realistic possibility that defense counsel will never complete review of the thousands of pages in the discovery file in such a manner that retrieval and analysis of necessary information will be possible.

Therefore, as to the government's appeal of Judge Zoss's November 8, 2001, Order On Motion For Bill Of Particulars, Judge Zoss's order will be affirmed.

### b. Failure to order further disclosures

■ However, Johnson also appeals Judge Zoss's failure to order *more extensive* disclosures. Specifically, she contends that she is also entitled to "particulars with respect to each of the violations alleged to be part of the continuing series of violations that comprise an essential element of the CCE counts." Defendant's Appeal From Magistrate's Ruling Partially Denying Defendant's Motion For Bill Of Particulars at 1. She contends that *United States v. Butler,* 885 F.2d 195, 198 (4th Cir.1989), and *United States v. Tipton,* 90 F.3d 861 (4th Cir.1996), *cert. denied,* 520 U.S. 1253, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997), or at least the "logic" used in those decisions, support her contention that she is entitled to a bill of particulars concerning the CCE charges, because the other counts of the indictment fail to define the series of acts that constituted a CCE. The government, however, contends that neither *Butler* nor *Tipton* involved "open discovery," so that those cases did not involve other satisfactory means for apprising the defendants of the overt acts and goals of the CCE. The government also points to the indictment in Case No. CR 00–3034–MWB as providing guidance on the alleged overt acts and goals of the CCE.

In denying Johnson's request for information about "overt acts," Judge Zoss relied entirely on the following part of the decision in *United States v. Ramirez,* 54 F.Supp.2d 25 (D.D.C.1999):

Unlike the general federal conspiracy statute, *see* 18 U.S.C. § 371, the conspiracy provision of the Controlled Substances Act does not require an indictment to list any overt acts taken in furtherance of the conspiracy. 21 U.S.C. § 846; *see United States v. Dempsey,* 806 F.2d 766, 769 (7th Cir. 1986); *United States v. Sweeney,* 688 F.2d 1131, 1140 (7th Cir.1982). In fact, the Supreme Court recently held that proof of "the commission of any overt acts in furtherance of the conspiracy" is not even required for a conviction under 21 U.S.C. § 846. (Citations omitted.)

54 F.Supp.2d at 30; *see* Order On Motion For Bill Of Particulars (November 8, 2001) at 7–8. There are at least two problems with relying on the *Ramirez* decision as the basis for denying Johnson's request for information regarding the "overt acts" in furtherance of a CCE. First, the quoted portion of the decision in *Ramirez* says nothing about the need for information concerning "overt acts" in furtherance of a CCE offense, nor did that court elsewhere consider the propriety of disclosure of "overt acts" in furtherance of a CCE offense in a bill of particulars; rather, the charges against the defendants in *Ramirez* involved conspiracy to distribute and possess with intent to distribute heroin and substantive counts of heroin distribution, possession with intent, and aiding and abetting such offenses. *See Ramirez*, 54 F.Supp.2d at 27. Second, immediately after the portion of the *Ramirez* decision quoted by Judge Zoss, the court in *Ramirez* actually *granted* part of the defendants' motion for a bill of particulars, reasoning that the less stringent pleading requirements made a bill of particulars "all the more important in a narcotics conspiracy case because the indictment itself provides so little detail." *Id.* at 30. Specifically, the court ordered the government to provide a bill of particulars "setting forth the names of all persons the government would claim at trial were co-conspirators (whether or not they will be called as trial witnesses), the approximate dates and locations of any meetings or conversations not already identified in the indictment in which each defendant allegedly participated, and the approximate date on which each defendant allegedly joined the conspiracy." *Id.* at 30. In ad-

dition, the court in *Ramirez* clarified that, "[w]hile the Court [did] not expressly requir[e] that the government provide the defendants with all overt acts taken by anyone in furtherance of the conspiracy," the court explained that "the government should understand that it is required to provide particulars as to all overt acts (or at least all meetings and conversations) in which *any* defendant participated so that each defendant may understand the government's view of his alleged role in the conspiracy." *Id.* (emphasis in the original). Thus, *Ramirez* does not properly stand as support for denial of a bill of particulars disclosing "overt acts" information for a drug conspiracy, let alone as support for denial of a bill of particulars disclosing "overt acts" information for a CCE charge.

Because Judge Zoss cited no authority properly supporting his conclusion in this regard, the court must perforce find that portion of Judge Zoss's ruling to be clearly erroneous. 28 U.S.C. § 636(b)(1)(A).[6] However, under the statute mandating the standard of review by this court, this court does not simply reverse, or reverse and remand, the part of a decision found to be "clearly erroneous," but must instead "reconsider" the matter in question—*i.e.*, reexamine and decide the question for itself. *Id.*

The matter in question on Johnson's appeal is only denial of a bill of particulars disclosing "overt acts" in furtherance of the CCE offense, not denial of a bill of particulars disclosing such acts in furtherance of the conspiracy charge. Upon reconsideration of that matter, the court begins by looking at the proof required to

---

**6.** The court recognizes that the statute and decisions *cited in* the *Ramirez* decision might provide some basis for Judge Zoss's conclusion that disclosure of "overt acts" in furtherance of a drug conspiracy is not required in a bill of particulars; however, the court need

not consider that question, because Johnson has not appealed the portion of Judge Zoss's order denying her request for a bill of particulars disclosing "overt acts" in furtherance of the conspiracy offenses.

establish a CCE offense, as a guide to how much information about the charge the defendant may need to prepare a defense to such a charge. The elements of a CCE offense and the elements of murder in furtherance of a CCE offense were stated above, at page 25. *See Maull,* 806 F.2d at 1342 (elements of a CCE offense); *see also Moore,* 149 F.3d at 778 (elements of murder in furtherance of a CCE offense). The court in *Maull* explained, further, that "[t]he CCE statute requires the Government to prove that the defendant's narcotics activities were part of a continuing series of violations of federal narcotics laws," and that "[a] continuing offense is a continuous illegal act or series of acts driven by a single impulse and operated by an unintermittent force." *Maull,* 806 F.2d at 1342–43. Thus, "[t]he term 'series' requires 'proof of three or more related violations.'" *Id.* at 1343; *see also United States v. Jones,* 801 F.2d 304, 307 (8th Cir.1986) ("'Continuing' requires that the course of illicit conduct span a definite period of time, and a 'series' is established by proof of three or more related violations.").

Although a "series" of offenses is required to establish a CCE offense, in reference to such an offense the Eighth Circuit Court of Appeals has observed that "[t]here exists no legal requirement that the predicate felonies be specifically listed in the indictment, *so long as the defendant has actual notice of the charges." United States v. Johnson,* 982 F.2d 1192, 1197 (8th Cir.1992) (emphasis added) (citing *United States v. Becton,* 751 F.2d 250, 256–57 (8th Cir.1984)). This standard is consistent with the standard specifically applicable to determination of the need for a bill of particulars, which is whether the indictment is sufficient to inform the defendant of the charges against her to permit her to prepare a defense, *see, e.g., Sileven,* 985 F.2d at 966; *Garrett,* 797 F.2d at 665; *Key,* 717 F.2d at 1210, for example, by distinguishing "the specific offense" charged from the general category of offenses defined by the statute. *See Hamling,* 418 U.S. at 117–18, 94 S.Ct. 2887.

Johnson is correct that *United States v. Butler,* 885 F.2d 195, 198 (4th Cir.1989), and *United States v. Tipton,* 90 F.3d 861 (4th Cir.1996), or, more precisely, the "logic" used in those decisions, support her contention that she is entitled to a bill of particulars concerning the CCE charges if the other counts of the indictment fail to define the series of acts that allegedly constituted a CCE. In *Butler*—as in the decision of the Eighth Circuit Court of Appeals in *Johnson*—the Fourth Circuit Court of Appeals noted "that a CCE indictment may be superficially valid even if it does not specifically state the predicate acts on which the charge is premised." *Butler,* 885 F.2d at 198. The court reasoned that there was no need for a bill of particulars as to the series of offenses in *Butler,* because allegations contained in other counts of the indictment may provide the requisite notice, and that "[t]his is particularly true if, as is the case here, the information sought in the bill is contained in counts which are explicitly referenced as predicate offenses to the CCE charge." *Butler,* 885 F.2d at 199. Similarly, in *Tipton,* the CCE charge specifically referenced, and indeed, realleged, other violations alleged in the same indictment as at least some of the "series" of violations. *Tipton,* 90 F.3d at 884 (also noting that, "[i]n the absence of a bill of particulars, sufficient protection against unfair surprise may be found in allegations in other counts of an indictment than that whose sufficiency is challenged. That form of protection amply served here."). Here, as Johnson argues, the other five counts of the second indictment provide little additional identification of predicate offenses of the CCE, nor are the counts of either indictment explicitly referenced to the

CCE offense in such a way that, even considering the two indictments together, as the government suggests, there is anything like sufficient notice of the predicate offenses for the CCE offenses in this case.[7] That is not the end of the matter, however.

Although the government is correct that there is no explicit reference to "open file" discovery in either *Butler* or *Tipton,* and the present case is therefore distinguishable from the "logic" Johnson asserts is apparent in those decisions regarding notice from other charges in the indictment, *Butler* nevertheless supports the government's contention that Johnson could have gained sufficient notice of the "overt acts" or "predicate offenses" underlying the CCE charges in "some other satisfactory form," in Johnson's case, for example, through "open file" discovery. This is so, because the court in *Butler* considered whether the defendant had "alternative sources of information" about parts of the CCE case "not spelled out in the indictment," in the form of transcripts from the government's prosecution of others with whom the defendant carried on his narcotics and importation schemes. *See Butler,* 885 F.2d at 199; *see also United States v. Martell,* 906 F.2d 555, 558 (11th Cir.1990) (the defendant had adequate notice of the predicate offenses of a CCE from reference to the two substantive conspiracy charges in the CCE count and his prior trial on the indictment, which ended in a mistrial, because that trial made him "acutely aware of the prior offenses that the government sought to prove at that trial," such that neither a superseding indictment nor a bill of particulars was required to divulge more specific facts).

However, for many of the same reasons stated above in reference to the conspiracy counts, the court is not convinced that the "open file" discovery in this case necessarily provides all of the information necessary for Johnson to prepare her defense to the CCE charges, either. This conclusion follows, again, at least in part, from the fact that a drug conspiracy is a lesser-included offense of a CCE offense, *see Jefferson,* 215 F.3d at 823, so that insufficiency of the notice of the lesser offense necessarily indicates insufficiency of the notice of the greater offense. Also, like the court in *United States v. Cephas,* 937 F.2d 816 (2d Cir.1991), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992), this court finds it "somewhat troubling" that the government would be reluctant to provide the defendant, in advance of trial, with more specific information as to particular acts that she, herself, had committed in furtherance of a CCE—that is, any acts in addition to the alleged participation in the murder of witnesses. *See Cephas,* 937 F.2d at 823. Although the court in *Cephas* ultimately concluded that the defendant could not meet the burden of establishing an abuse of discretion in denial of his request for a bill of particulars, where the indictment was otherwise sufficient and named the other persons involved in the CCE, *see id.,* and this court has already affirmed that part of Judge Zoss's ruling requiring the government to disclose certain other participants in the CCE offenses, this court concludes that neither the indictments, nor the "open file" discovery, nor the listing of participants in the CCE required by Judge Zoss will necessarily suffice to permit Johnson to prepare

7. This is so, the court believes, even if the court were to accept the conclusion of the Fourth Circuit Court of Appeals in *Tipton* that "murders in furtherance" of a CCE are *also* predicate offenses of a CCE, *see Tipton,* 90 F.3d at 884, because it is not clear, in John-

son's case, that the murders of five people on two separate occasions necessarily constitute the required "series" of three or more predicate offenses continuing over time to establish a CCE.

her defense. Specifically, even taken altogether, these sources of information about the CCE charges may not permit Johnson to distinguish "the specific offense[s]" charged from the general category of offenses defined by the statute, and thus, to prepare her defense to the specific charges, *see Hamling*, 418 U.S. at 117–18, 94 S.Ct. 2887, in light of the sheer volume and complexity of the information in the "open file." Just as the court concluded above, in reference to the conspiracy charges, that factors that may be relevant to the need for a bill of particulars include the duration, scope, and number of persons involved in the conspiracy, this court believes that such factors are also relevant to the need for a bill of particulars as to the "greater offense" CCE charges. *Cf. Reddy*, 190 F.Supp.2d at 570 (disclosure of co-conspirators is warranted where "the number of defendants was large, where the alleged conspiracy spanned long periods of time and where the alleged schemes were wide-ranging.") (citing cases); *Ballesteros Gutierrez*, 181 F.Supp.2d at 356 (no disclosure of co-conspirators was required where the conspiracy was of limited nature and duration). The CCE offenses charged here involve a CCE that allegedly lasted more than eight years, including a substantial period of time after the alleged murders in furtherance of that CCE, and plainly involved numerous participants, and various predicate offenses not necessarily identified in the other charges in the two indictments. Again, the CCE charges do not identify any objectives or predicate offenses of the CCE, nor do they expressly reference any other substantive charges. Finally, the court finds that the requirement of proof of a "series" of predicate offenses for a CCE offense distinguishes a CCE charge significantly from a drug conspiracy charge, which does not require proof of "overt acts," so that disclosure of "overt acts" as to the CCE offenses is

justified, even where such disclosure is not justified as to the conspiracy offenses.

Therefore, upon "reconsideration" of the portion of Judge Zoss's ruling challenged on Johnson's appeal, which this court finds to be "clearly erroneous," *see* 28 U.S.C. § 636(b)(1)(A), the court will require a bill of particulars that, in addition to the disclosures required by Judge Zoss, discloses the location(s), substance, time, place, and date of each overt act *upon which the government intends to rely to prove the CCE* underlying the offenses charged in Counts 6 through 10 of the second indictment.

## C. Appeal Of The Ruling Denying Johnson's Motion For Transfer

Also before the court is Johnson's appeal of Judge Zoss's denial on May 7, 2002, of Johnson's third motion for transfer to a different facility, which was her April 24, 2002, "Motion, Pursuant to 18 U.S.C. § 3142(i), for Transfer to a Different Facility." The court must also determine whether Judge Zoss's denial of that motion was clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A).

### 1. Arguments of the parties

Johnson appealed Judge Zoss's order denying her motion to transfer on May 13, 2002, incorporating, in the first instance, her brief filed in support of that motion. That brief relied on interference with counsel and her ability to prepare her defense, based on the combined travel time of all three counsel to meet with her in Cedar Rapids versus Des Moines, which is where she would prefer to be incarcerated pending trial. She also asserted in that brief that the conditions in the Linn County Jail amounted to unlawful "punishment" of a pre-trial detainee. On appeal, she argues, further, that there was no evidence of the legitimacy of the detention determinations and security issues as to her on

which the government apparently relied, because the only evidence in the record, adduced in the course of a "*Massiah* hearing," was that the government hand-picked a location other than the Linn County Jail for Johnson's initial detention. Johnson also contends that her case is distinguishable from other cases in which a transfer was denied, because of the length of her incarceration, which is approaching the maximum period for which one can be sentenced to a county jail under Iowa law, and because a "*Massiah* violation" of her right to counsel has caused the extensive delay in bringing her case to trial.

The government resisted Johnson's appeal, incorporating its arguments in its original brief in resistance to Johnson's motion for transfer to a different facility. Those arguments were that the court does not have the authority, pursuant to 18 U.S.C. § 3142(i), or any other statute or regulation, to direct the U.S. Marshal Service to house a defendant at any specific location, and that Johnson's complaints about the conditions at the Linn County Jail do not amount to a violation of her constitutional rights.

#### 2. Interference with counsel and preparation of defense

█ The court will assume, solely for the sake of argument, that the court *does* have the authority to transfer Johnson to a different facility under 18 U.S.C. § 3142(i) or some other statute or precedent—a point poorly supported, if at all, by any authority proffered by the defendant—if, for no other reason, than the need to protect a detainee from interference with her Sixth Amendment rights to counsel and to assist in the preparation of her defense. This is so, because the right of the accused "[i]n all criminal prosecutions ... to have the Assistance of Counsel for his defence" is grounded squarely in the text of the Sixth Amendment to the United States Constitution. Moreover, "to deprive a per-son of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton,* 474 U.S. 159, 170, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).

Although the court has not found any circuit precedent specifically considering claims of denial of the right to counsel or ability to prepare a defense based on *denial* of a *defendant's request* for transfer to a different facility, the court nevertheless finds guidance in precedent of the Eighth Circuit Court of Appeals considering whether an *involuntary* transfer of a pretrial detainee to a different facility interfered with the detainee's right to counsel. In *Ervin v. Busby,* 992 F.2d 147 (8th Cir.), *cert. denied,* 510 U.S. 879, 114 S.Ct. 220, 126 L.Ed.2d 176 (1993), the Eighth Circuit Court of Appeals concluded that a detainee's due process rights were not implicated when he was transferred from one prison to another. *Ervin,* 992 F.2d at 150. However, the court concluded that "a detainee's constitutional rights may be infringed where the transfer interferes with his right to assistance of counsel; the state has created a liberty interest in remaining in a particular facility; or the nature and duration of the new form of incarceration exceeds the original purpose for which he was detained." *Id.* (citations omitted). The court explained, further, that "[w]ith regard to [the detainee's] access to counsel after the transfer, we note that evidence of actual prejudice is necessary to show interference with the right to counsel." *Id.* The court can think of no reason why these principles, requiring demonstration of some actual prejudice, should not also apply in the "obverse" situation, denial of a requested transfer of a pretrial detainee to a different facility.

However, the Second Circuit Court of Appeals has opined that "[i]t is not clear to us what 'actual injury' "—which is else-

where in that court's decision described as "prejudice"—"would even mean as applied to a pretrial detainee's right to counsel." *See Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir.2001). Nevertheless, that court concluded that what a pretrial detainee must show, applying standards drawn from *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled in part on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), and *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), is "unjustifiable obstruction" with legal representation, and that the conduct of the jail must be evaluated in the light of the central objective of prison administration, safeguarding institutional security. *Benjamin*, 264 F.3d at 187. The court likened these standards to its prior conclusions that the detainee must show that the practices of the jail "unreasonably burdened" the detainee's opportunity to consult with an attorney and to prepare his defense and its granting of an injunction *against* prison transfers that "significantly interfered" with pretrial detainees' access to counsel. *Id.*

In light of these precedents, the court concludes that Judge Zoss's denial of Johnson's motion for transfer to a different facility on the ground that she had not shown any violation of her constitutional right to counsel, because she had failed to show that there was any interference with her right to prepare her case adequately, did not involve application of any standard that was demonstrably "contrary to law." *See* 28 U.S.C. § 636(b)(1)(A). The standards suggested in decisions cited by the defendant in her original brief in support of her motion to transfer are not to the contrary. *See Falcon v. United States Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir.1995) (considering whether the defendant's Sixth Amendment right to counsel "is being infringed," such that the court should order a pretrial detainee into the custody of the United States Marshal); *United States v. MacFarlane*, 759 F.Supp. 1163, 1166–67 (W.D.Pa.1991) (rejecting a request for release or transfer to a different facility, because the defendant had shown no "compelling or otherwise persuasive justification" in his assertion that travel time for attorneys interfered with preparation of his defense).

The court also finds nothing "clearly erroneous" in Judge Zoss's determination that the fact that Johnson's three attorneys would save a combined total of 258.2 miles when all three of them travel to meet with Johnson at the same time, if she were incarcerated in Des Moines rather than Cedar Rapids, fell "far short" of a denial of constitutional rights to an attorney and to prepare her case adequately. This court cannot find any hint of any "actual prejudice" to Johnson, or even any "unjustifiable obstruction" of or "unreasonable burden" upon her right to counsel from the location of her present incarceration. *Cf. Busby*, 992 F.2d at 150; *see also Benjamin*, 264 F.3d at 187. As Judge Zoss explained,

> The two defense attorneys taking the lead in Johnson's defense are from Cedar Rapids and Des Moines, Iowa. The travel distance if Johnson were transferred remains identical for these two attorneys; the Cedar Rapids attorney would have to travel rather than the Des Moines attorney. The fact that her third attorney, who is from Kansas City, Missouri, has to travel farther than otherwise might be the case does not even approach a constitutional violation of Johnson's right to counsel.

Order Denying Motions For Transfer To A Different Facility, May 7, 2002, at 6. Moreover, the court does not find Johnson's circumstances in any respect more "compelling" than those presented in *MacFarlane*, as she argues, even if the mileage

differential for attorney travel between the present and preferred places of incarceration is substantially greater in her case than in *MacFarlane*. *See MacFarlane*, 759 F.Supp. at 1167 (the total driving time between the present and proposed locations of incarceration differed by less than half an hour). The fact is, one of Johnson's lead counsel has his offices in the same city where Johnson is incarcerated, making his travel time to see her merely minutes, so that any suggestion that access to counsel is obstructed to any meaningful degree by her present location of detention is completely unpersuasive.

The court affirms that part of Judge Zoss's denial of Johnson's April 24, 2002, "Motion, Pursuant to 18 U.S.C. § 3142(i), for Transfer to a Different Facility" premised on interference with her right to counsel or to prepare her defense.

### 3. Conditions of confinement

 Johnson also asserts that Judge Zoss clearly erred by denying her motion to transfer based on conditions at the Linn County Jail, which, in the circumstances of her case, amount to unconstitutional "punishment" of a pretrial detainee. "The government cannot inflict punishment, as contemplated by the Eighth Amendment, until after it has secured a formal adjudication of guilt in accordance with due process of law." *Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir.1998) (internal quotation marks and citations omitted). As the Eighth Circuit Court of Appeals has explained,

> The standard applicable to conditions of confinement claims by pretrial detainees was enunciated in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The proper inquiry is whether those conditions amount to pun-

ishment of the detainee, for, under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt. *Id.* at 535, 99 S.Ct. at 1871–72. However, not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* at 537, 99 S.Ct. at 1873. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." *Id.* at 539, 99 S.Ct. at 1874. The Government has legitimate interests that stem from its need to manage the facility in which the individual is detained. *Id.* at 540, 99 S.Ct. at 1874–75. Furthermore, there is a *de minimis* level of imposition with which the Constitution is not concerned. *Id.* at 539 n. 21, 99 S.Ct. at 1874 n. 21.

*Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir.1996). Reasoning from Eighth Amendment standards applicable to convicted inmates, the court also suggested that "the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis." *Id.* at 269.[8] Judge Zoss also relied on the standards stated in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), in denying Johnson's motion for a transfer based on conditions at the Linn County Jail, so that it cannot be said that the standard he applied was "contrary to law." *See* 28 U.S.C. § 636(b)(1)(A).

Applying these principles to Johnson's claim, Judge Zoss concluded as follows:

> [T]he court simply does not agree that conditions within the Linn County Jail amount to "punishment," or otherwise violate Johnson's constitutional rights. Nor do the jail conditions provide a com-

---

**8.** However, in *Smith*, the court noted that "[u]nder *Bell v. Wolfish*, a pretrial detainee faces a lighter burden to show a constitution-

al violation than under the Eighth Amendment." *Smith*, 87 F.3d at 268 n. 4 (citing *Bell*, 441 U.S. at 537 n. 16, 99 S.Ct. 1861).

pelling reason to transfer Johnson to another facility. The court finds that even in light of Johnson's extended pretrial detention, the jail conditions are "necessarily incident to administrative interests in safety, security and efficiency," and are not punitive in intent. *Johnson–El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir.1989). Order Denying Motions For Transfer To A Different Facility, May 7, 2002, at 5–6. In a footnote, Judge Zoss explained further that Johnson had failed to show that her treatment was "invidiously dissimilar" from that accorded other pretrial detainees, and rejected Johnson's contention that lack of contact visits amounted to "punishment." *See id.* at 6 n. 2. The court concurs in these conclusions.

Although Johnson contends that the government cannot properly rely on the legitimacy of its detention determinations and alleged security issues, where there is no evidence of such determinations, but there is, instead, evidence adduced at the *Massiah* hearing that the government picked another location for Johnson's initial detention, this argument misses the point. The legitimacy *of the magistrate's* determination that Johnson must be detained prior to trial cannot reasonably be disputed, and the legitimacy *of the Linn County Jail's* interests in the safety, security, and management *of the institution* cannot reasonably be disputed, either. *See Smith*, 87 F.3d at 268. The conditions of which Johnson complains amount to no more than "a *de minimis* level of imposition with which the Constitution is not concerned." *Id.* (citing *Bell*, 441 U.S. at 540, 99 S.Ct. 1861).

Notwithstanding that "the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis," *id.* at 269, the length of Johnson's pretrial detention, and the fact that a "*Massiah* violation" may be responsible, in part, for the extensive delay in bringing her to trial, do not change the court's conclusion that Johnson has not been subjected to unconstitutional "punishment." Even in light of the extended period of Johnson's pretrial detention, that detention is itself justified, the conditions imposed by that detention are justified by the safety, security, and management interests of the institution in which she is incarcerated, and the impositions still are no more than *de minimis.* Moreover, even if the conditions required some alleviation to meet constitutional requirements—which this court finds that they do not—Johnson's transfer to a different facility would not necessarily be the appropriate remedy.

Therefore, Judge Zoss's May 7, 2002, Order Denying Motions For Transfer To A Different Facility was neither contrary to law nor clearly erroneous, and will be affirmed.

### III. CONCLUSION

The court has considered Judge Zoss's November 8, 2001, Order On Motion For Bill Of Particulars, and May 7, 2002, Order Denying Motions For Transfer To A Different Facility, in light of the parties' various appeals, including the arguments of the parties before Judge Zoss and on appeal to the undersigned, and has "reconsidered," where necessary, portions of Judge Zoss's rulings found to be contrary to law or clearly erroneous. *See* 28 U.S.C. § 636(b)(1)(A).

THEREFORE,

1. As to Judge Zoss's November 8, 2001, Order On Motion For Bill Of Particulars,

a. That part of the ruling appealed by the government on November 15, 2001, is **affirmed**; and

b. That part of the ruling appealed by defendant Johnson on November 16, 2001, is **reconsidered** to require a bill of

particulars that, in addition to the disclosures required by Judge Zoss, discloses the location(s), substance, time, place, and date of each overt act *upon which the government intends to rely to prove the CCE* underlying the offenses charged in Counts 6 through 10 of the second indictment.

2. As to defendant Johnson's appeal of Judge Zoss's May 7, 2002, Order Denying Motions For Transfer To A Different Facility, the decision is **affirmed in its entirety.**

**IT IS SO ORDERED.**